ATTORNEY GENERAL *ex rel.* HECKER *v.* RUMFORD CHEMICAL WORKS and others.[1]

(*Circuit Court, D. Rhode Island.* May, 1876.)

PATENTS FOR INVENTION—CANCELLATION—POWER OF ATTORNEY GENERAL.
  The attorney general of the United States has no power to maintain in his own name, "as he is the attorney general of the United States," a bill in equity to repeal letters patent for an invention.

Bill or information to repeal reissued letters patent No. 2,597, dated May 7, 1867, and No. 2,979, dated June 9, 1868, granted on surrender of original letters patent issued April 22, 1856, to Eben N. Horsford, for a new and improved preparation or substance, being a substitute for a pulverulent acid for use in the manufacture of dry powders when a dry acid is required, and afterwards assigned to the Rumford Chemical Works. The bill stated three grounds, viz.: (1) Want of novelty by reason of prior publications; (2) interpolation; (3) insufficiency in the instructions given in the specifications. In the title the plaintiff was styled "The Attorney General, upon the relation of George V. Hecker." In the stating part of the bill, "Informing, showeth unto your honors George H. Williams, as he is attorney general of the United States of America." The prayer is: "Your informant prays this honorable court to adjudge and decree." The subpoena requires the defendants "to appear and answer the bill of complaint of George H. Williams, the attorney general of the United States." Defendants filed a motion to take the bill from the files, and set aside the service of subpoena, for the reasons: (1) The bill was filed and the subpoena issued and served without authority of law. (2) Plaintiff has no legal interest in the matters set forth. (3) The court has no

---

[1] NOTE. The opinion of Judge SHEPLEY in this case was pronounced in 1876, but has never been published in an accessible form. In view of the reliance placed on it by Judge COLT in the case of *U. S.* v. *Telephone Co., ante,* 591, it is reprinted at this time. [ED.

jurisdiction of the matters involved, or to grant the relief prayed for. (4) The bill is not signed by counsel. A demurrer was also filed, stating as the grounds thereof: (1) George H. Williams had no lawful authority to file such information, or to commence or continue this proceeding. (2) This court has no jurisdiction to entertain said information, because it does not appear thereby that the same is filed by a citizen of one state against a citizen of another state. (3) George H. Williams, "as he is attorney general of the United States," had no lawful authority to file the said information or to continue this proceeding. (4) The information and this proceeding are not in the name of or in behalf of the United States. (5) The informant has not signed said information, nor has counsel signed the same. (6) This court has no jurisdiction to entertain this proceeding, because (*a*) the United States are not parties plaintiff or petitioners; (*b*) this proceeding does not arise under the constitution or laws of the United States; (*c*) the information does not state a cause for equitable relief. Hearing on the bill and demurrer.

*Wm. M. Evarts, Clarence A. Seward,* and *Charles S. Bradley,* for defendants.

*Clarence A. Seward,* for defendants, in support of the motion and demurrer.

If either of the grounds of the motion are well taken, the defendant may make such motion. It is the usual practice, (Daniell, Ch. 295, 411,) and the court has discretion to grant it, (*Maclean* v. *Dawson,* 4 De Gex & J. 155.) If the bill was filed without authority, the court may order it to be taken from the files. *Wartnaby* v. *Wartnaby,* Jac. 377; *Blake* v. *Smith,* Younge, 596; Story, Eq. Pl. § 66. If the bill is not signed by counsel, the court will of its own accord order it to be taken from the files, (*French* v. *Dear,* 5 Ves. 547, 550,) and the defendant may move for such an order, (*Partridge* v. *Jackson,* 2 Edw. Ch. 520.)

George H. Williams appears in no other capacity than an individual, and discloses no such personal interest as entitles him to a standing in court for the purpose of repealing a patent. *Merserole* v. *Paper-Collar Co.,* 6 Blatchf. 361. There is no averment that George H. Williams is a citizen of a state other than Rhode Island, and, if jurisdiction is claimed on the ground of citizenship, the defect is fatal. 3 Abb. Nat. Dig. 531.

The attorney general *qua* attorney general has no power to institute this proceeding. The powers of the attorney general are not to be amplified by any reference to the powers of the attorney general in England, and, if he has the power to institute this action, it must exist by some law or custom of this country. There is no reported case of a suit by the attorney general in his own name, or "as he is attorney general," so that there is no custom in this country. The published decisions of the attorney general's department are against the existence of any such power. 7 Op. Atty. Gen. 50. All suits in behalf of the United States must be brought in the name of the United States, except in cases expressly provided for. *Benton* v. *Woolsey,* 12 Pet. 27. The attorney general is purely a creation of law, and has no larger powers than the law gives him. His power to conduct litigations is expressly limited to such as are "in the interest of the United States." Rev. St. p. 60, § 359.

All precedent is against the present form of allegation. "On behalf of said state" is the usual form of procedure in the several states of the Union. *Lord Proprietary* v. *Jenings,* 1 Har. & McH. 92; *Respublica* v. *Griffiths,* 2 Dall. 112; *State* v. *Deliesseline,* 1 McCord, 52; *State* v. *Dover,* 9 N. H. 468; *Com.* v. *Hite,* 6 Leigh, 588; *State* v. *Ashley,* 1 Pike, 279. If any fraud exists in this case, it is against the United States, and it is the proper party to assert the remedy. *Mowry* v. *Whitney,* 14 Wall. 441. This principle prevails also in England with reference to the capacity of the United States. *U. S.* v. *Wagner,* 2 Ch. App. 594. The United States attorney for the district in

which the suit was brought was the proper officer to commence such a proceeding, (Rev. St. p. 145, § 771; *U. S.* v. *Corry*, 23 Mo. Law Rep. 157; *U. S.* v. *Doughty*, 7 Blatchf. 424;) and the words "George H. Williams, as he is attorney general of the United States," should be stricken out, which would leave no legal plaintiff on record. The fact that the bill is signed by Mr. Gardner, United States attorney for the district of Rhode Island, cannot be relied on to sustain jurisdiction. As the United States is not mentioned as plaintiff, the district attorney has no legal client, and his signature does not form a part of the bill. *U. S.* v. *McAvoy*, 4 Blatchf. 418. This defect cannot be cured by amendment. *Attorney General* v. *Fellows*, 1 Jac. & W. 254. The attorney general having resigned since the institution of this suit, there is no provision for substituting his successor, and, when the law intends an action to survive, there is always a positive statutory provision to that effect.

If this proceeding is maintainable at all, it can only be maintained in the name of, or on behalf of, the United States, which fact does not appear on the face of the information. Even in England, the writ of *scire facias* to repeal a patent must be in the name of the crown, and the attorney general there has no authority to substitute his own name and official title therefor. *Reg.* v. *Archipelago Co.*, 1 El. & Bl. 351; *King* v. *Else*, Dav. Pat. Cas. 144; *King* v. *Arkwright*, Id. 61; *King* v. *Butler*, 3 Lev. 220; *Rex* v. *Hare*, 1 Strange, 146; *Reg.* v. *Ballivos*, 1 P. Wm. 207; *Queen* v. *Mill*, 10 C. B. 379; *Reg.* v. *Cutler*, 3 Car. & K. 215; *Queen* v. *Hancock*, 5 De Gex, M. & G. 331; *Queen* v. *Mill*, 14 Beav. 312; *Queen* v. *Betts*, 15 Adol. & E. 540; *Bynner* v. *Reg.*, 9 Adol. & E. (N. S.) 523. This is confirmed by the language of the writ. Hind. Pat. 16 Law Lib. (O. S.) 715, form No. 5.

The attorney general has no statutory right to delegate the power to sign his name, and the absence of his signature to the information is fatally defective. The rule in England on this point is inflexible. Daniell, Ch. Pr. 364. This court has no jurisdiction because the United States is not a party; and if there is a wrong, and this court can redress it, it can only do so for a wrong against the United States, and on its prayer and in its suit. *U. S.* v. *Doughty*, 7 Blatchf. 424. The relator is not looked upon as a party. *Attorney General* v. *Mayor*, 1 Moll. 95; *Attorney General* v. *Wright*, 3 Beav. 447; *Attorney General* v. *Wyggeston's Hospital*, 16 Beav. 313; *Attorney General* v. *Barker*, 4 Mylne & C. 262. The attorney general having resigned, no one has been appointed to appear in this case as the special representative of the United States, (Rev. St. p. 61, § 366,) and the relator has no standing in court.

This court has no jurisdiction to entertain this proceeding. This court acquires jurisdiction by statute alone. *U. S.* v. *Eckford*, 6 Wall. 488. The information is not embraced within any of the provisions of the statutes conferring jurisdiction on this court. Rev. St. p. 110, par. 2; Id. p. 111, par. 9; act of March 3, 1875. It is not an action on behalf of the United States. The words, "as he is the attorney general," are descriptive, and do not embrace the corporation or government of which he is an officer. *Hills* v. *Bannister*, 8 Cow. 31; *Taft* v. *Brewster*, 9 Johns. 334; *Barker* v. *Insurance Co.*, 3 Wend. 94; *Moss* v. *Livingston*, 4 N. Y. 208.

If the United States is a party plaintiff, its rights as such are no larger than the rights of an individual suitor. *U. S.* v. *McRae*, 8 Eq. Cas. 69, 77; *U. S.* v. *Prioleau*, 2 Hem. & M. 559; *People* v. *Brandreth*, 36 N. Y. 196; *U. S.* v. *Nourse*, 6 Pet. 470; *U. S.* v. *Arredondo*, Id. 711. Therefore, in the absence of statute, the United States can only ask such relief as equity accords a private citizen presenting a proper case. Equity cancels outstanding fraudulent deeds of private citizens, on the ground that they constitute a cloud upon the title. For the same reason equity will sustain a bill by the government to cancel a patent for lands. *U. S.* v. *Stone*, 2 Wall. 525; *Bagnell* v. *Broderick*, 13 Pet. 450; *U. S.* v. *Hughes*, 11 How. 568.

But this furnishes no ground for the assertion that the United States can

ask the same relief in respect to patents for invention. The United States government did not succeed to the prerogative of the crown to grant monopolies. Patents for invention are not known to the common law of the United States. The constitution is the only source of power to grant them. How far the people since the Revolution succeeded to the prerogative of the crown to appeal to courts to vacate grants on account of fraud has never been definitely settled. *People* v. *Clarke*, 9 N. Y. 359. But it has been definitely settled that a private citizen cannot maintain a bill to repeal letters patent for an invention. *Merserole* v. *Paper-Collar Co.*, 6 Blatchf. 356. The power here invoked has never been settled by judicial decision. *Mowry* v. *Whitney*, 14 Wall. 439, and the remarks in the other cases are not decisive of this point, since it was not before the court. An outstanding patent does not constitute a cloud on the title of the United States, for it has no title. It grants nothing which belonged to it prior to the grant. And so long as the patent is not sought to be enforced it is of no injury to the public. *Ex parte Wood*, 9 Wheat. 603. There being no statute authorizing this proceeding, and no inherent jurisdiction, it follows that if a private individual cannot ask the court for this relief the United States cannot.

The English chancery court exercises jurisdiction to repeal patents (1) because English patents are expressly made subject to that jurisdiction; (2) the jurisdiction cannot be exercised by a bill in equity, but only by *scire facias*. Fost. Sci. Fa. 246, 250; Hind, Pat. 64. And it required positive statute to save this right. St. 11 & 12 Vict. c. 94, par. 14; 12 & 13 Vict. c. 109, p. 14; 15 & 16 Vict. c. 83, p. 15.

*Attorney General* v. *Vernon*, 1 Vern. 277, is relied on as a precedent for the doctrine that letters patent may be repealed by bill in chancery. But in that case the letters patent were for lands, and the bill was entertained on the ground that the grant was a cloud on the title. It has never been followed in England or in this country. Of the cases relied on *Jackson* v. *Lawton*, 10 Johns. 24 decides that a land grant cannot be collaterally attacked; *Mowry* v. *Whitney*, 14 Wall. 439, decides that an extension of letters patent for an invention cannot be collaterally attacked; *Walker* v. *Wells*, 17 Ga. 549, cites it as authority, but the court refused to be bound by it.

If congress had intended the circuit courts to have this power, they would have said so. Act of 1790 (1 U. S. St. at Large, 109, § 5) provides a remedy for the repeal of letters patent. Act of 1793 (1 U. S. St. at Large, 318, § 6) retained this remedy. *Stearns* v. *Barrett*, 1 Mason, 153; *Delano* v. *Scott*, Gilp. 489; *Ex parte Wood*, 9 Wheat. 609. These acts were repealed by the act of July 4, 1836, which entirely reconstructed the patent system, and provided new modes of procedure. No right is conferred by this act upon the United States to file a bill in its own name, or in the name of the attorney general, for the repeal of a patent. If a patent may be repealed in England under the principles of general law, it is because the defects on such principles inhere in the grant. Here the provisions for authorizing a patent to be issued, and providing how it may be defeated, removes the allegation of illegality inherent in the grant. *White Water Valley Co.* v. *Vallette*, 21 How. 425.

The Acts of 1790 and 1793 created and conferred a new jurisdiction to be exercised in a prescribed manner. The statute being affirmative, the remedy could not be pursued in any other manner. Dwar. St. 41; *Hardmann* v. *Bowen*, 39 N. Y. 199; *Stafford* v. *Ingersol*, 3 Hill, 41; *Renwick* v. *Morris*, 7 Hill, 575; *McKeon* v. *Caherty*, 3 Wend. 495; *Pollard* v. *Bailey*, 20 Wall. 520; *Ex parte Wood, supra.* The act of 1836, by the repeal of these provisions, took away the jurisdiction originally given, created a new jurisdiction, and gave new remedies. And the court cannot substitute for this new remedy one not contemplated by the legislature. *U. S.* v. *Tilton*, 11 Mo. Law Rep. (N. S.) 598; *U. S.* v. *Nourse*, 6 Pet. 493; *U. S.* v. *Boisdore's Heirs*, 8 How.

121; *McNulty* v. *Batty*, 10 How. 79; *Farmers' Bank* v. *Deering*, 8 Pat. Off. Gaz. 312.

*Causten Browne, Charles F. Blake*, and *Albert G. Browne, Jr.*, for informant.

The right to grant monopolies for limited terms for new and useful inventions is a right inhering in every sovereign political power, whether monarchical or republican. *Livingston* v. *Van Ingen*, 9 Johns. 507, 559, 560. It was a right at common law in England, and the statute of monopolies (21 Jac. 1, c. 3) was declaratory merely, (Hind. Pat. c. 2; Chit. Prerog. 177, 178; 1 Brodie, Const. Hist. 214, note; 2 Brodie, 28.) The passage of that statute was occasioned by the royal abuse of the common law right, viz., granting patents that were void for want of authority, or that were void for want or failure of the consideration of benefit to the public. 1 Brodie, Const. Hist. 214, 215; 4 Macauley, Hist. (Boston Ed. 1856,) 103, 104; 8 Hume, Hist. (Cooke's Ed. 1793,) 159 *et seq.*, 238; 9 Hume, Hist. 57, 199; Hallam, (Harper's Ed. 1849,) 153, 154; Bract. L. i. c. 8; Year Book, 19 Hen. VI. 63; Co. Lit. 115b; Chit. Prerog. 386. The power of the crown as *parens patriæ* has no special application to this class of rights. Bac. Abr. "Prerogative," D, 5; Chit. Prerog. 152–162, c. 9.

The right existing for the benefit of the public, and not for the advantage of the sovereign, or the exclusive advantage of the patentee, is one of the ordinary functions of government. Hind. Pat. 103, *n. a. d.; Kendall* v. *Winsor*, 21 How. 322, 327, 328; 3 Hamilton's Works, 253; *Harmer* v. *Plane*, 14 Ves. 130, 132.

Whatever the nature of the right, it was possessed by every one of the states before the adoption of the federal constitution. *Livingston* v. *Van Ingen*, 9 Johns. 507, 560, 573; Story, Const. § 1152; Rawle, (2d Ed.) 106; Federalist, No. 43; 2 Curtis, Hist. 340; Ancient Charters and Laws of the Colony of Massachusetts Bay, 170. The nature and incidents of the rights thus possessed are to be interpreted by the nature and incidents of the rights possessed and exercised by the parent country. Resolves of the Declaration of Rights of the Colonies, October 14, 1774; Story, Const. §§ 155–157, 162, 163, 175, 176, 194, note 2; *Patterson* v. *Winn*, 5 Pet. 233; Quincy, 258; same App. 512–540; Clark's Colonial Law, (1834 Ed.) 15, 16; Chit. Prerog. 33; *Wilbur* v. *Tobey*, 16 Pick. 177, 182.

It is part of the powers and duties of the law officer of every government where the common law prevails, in the absence of statute, upon general principles of jurisprudence, to institute proceedings when necessary to enforce the rights of government, or correct their erroneous exercise. *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 698; 5 Dan. Abr. c. 138, art. 2, § 1; *Florida* v. *Georgia*, 17 How. 478, 495; *Parker* v. *May*, 5 Cush. 336; *Com.* v. *Fowler*, 10 Mass. 290, 295; *Goddard* v. *Smithett*, 3 Gray, 116, 122; *State* v. *Dover*, 9 N. H. 468; *Baptist Association* v. *Hart's Ex'rs*, 4 Wheat. 1, 50; *Charles River Bridge* v. *Warren's Bridge*, 7 Pick. 446, 506; *Respublica* v. *Griffiths*, 2 Dall. 112. Such power was exercised in England by the attorney general in relation to erroneous grants of letters patent before the statute of monopolies. 1 Brodie, Const. Hist. 526–536; Id. 215; 4 Inst. 72, 85. And also ever since the statute. 4 Inst. 88; Bac. Abr. "Scire Facias," c. 3; 2 Bl. Comm. 348; 3 Bl. Comm. 260, 261; 4 Bl. Comm. 159; Hind. Pat. 397, 408; *Queen* v. *Prosser*, 11 Beav. 306; *Mowry* v. *Whitney*, 14 Wall. 434, 440. They were not and are not exercised by him as servant of the crown, but as a public officer, at his discretion, for the public benefit. *Queen* v. *Prosser*, 11 Beav. 306, 313, 314; *King* v. *Butler*, 3 Lev. 220, 222; Broom, Max. 40, 41. The powers thus derived from the common law to institute proceedings to cancel grants of patents was exercised by the law officers of the states without statutory authority, in respect to grants of land before the adoption of

the federal constitution, and when the grant was of record in the executive, instead of judicial department, the process adopted was an information in equity. *Lords Proprietary* v. *Jenings*, 1 Har. & McH. 92, 144; *Norwood* v. *Attorney General*, 2 Har. & McH. 201; *Smith* v. *Maryland*, Id. 244; *Op. Atty. Gen.*, 1 Har. & McH. (App.) 555, 556.

The absence of decisions showing the exercise of this power in respect to grants of patents for inventions before the adoption of the federal constitution is sufficiently explained by the scanty development of the mechanic arts until after that time. Sen. Doc. 338, (1st Sess. 24th Cong.;) Ann. 2d Cong. (1793,) p. 853 *et. seq.;* House Doc. 38, (1st Sess. 21st Cong.;) also the scarcity of reports published.

The nature and incidents of the rights, powers, and duties vested in the United States in respect to patents for invention are to be construed by reference to the nature and incidents of like rights, powers, and duties existing in the states at the adoption of the federal constitution. *Penhallow* v. *Doane*, 3 Dall. 54, 92; *Ware* v. *Hylton*, Id. 199, 224, 316; 2 Curt. Const. Hist. 340; Patent Act 1793, c. 11, § 11 The United States, therefore, took the right to grant letters patent as it had been possessed by the states, with the incident of the power and duty of the law officer of the government which makes the grant, to bring suits for the benefit of the public to repeal erroneous grants, independently of statutory authority. 3 Dall. 320, 335. And this power is not restricted by Rev. St. 359, which imposes a duty, but does not create a power. It is the duty of the attorney general to direct the district attorney to bring the information. *U. S.* v. *Doughty*, 7 Blatchf. 424.

Even if the attorney general's power is dependent on statute, the United States is interested in an information to cancel a patent regular on its face, procured by fraud, or in excess of authority: (*a*) Because it is a necessary party to the suit. *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 698; *Florida* v. *Georgia*, 17 How. 478, 495; *Baptist Ass'n* v. *Hart's Ex'rs*, 4 Wheat. 50; *Rubber Co.* v. *Goodyear*, 9 Wall. 788. (*b*) It is its error sought to be corrected, (*c*) which can not be done by any collateral proceeding. *Field* v. *Seabury*, 19 How. 323, 332; *Rubber Co.* v. *Goodyear*, 9 Wall. 788, 797; *Mowry* v. *Whitney*, 14 Wall. 434.

The form of this action is immaterial. An information in equity in this country for this purpose is the equivalent of *scire facias* in England. *U. S.* v. *Stone*, 2 Wall. 525, 535, 536; *Mowry* v. *Whitney*, 14 Wall. 434, 440.

Act of 1793 was not exclusive of the common-law remedy. Statutes in derogation of common law are to be construed strictly. The statutory remedy must be as complete as the common-law remedy, in order to be exclusive and not merely cumulative. Courts do not favor repeal by implication. The intention to take away the common-law remedy must be manifest, or the statute will be adjudged affirmative merely, or in aid of the common law. *Melody* v. *Reab*, 4 Mass. 471; *Barden* v. *Crocker*, 10 Pick. 383; *Jennings* v. *Com.* 17 Pick. 80; *Turnpike Co.* v. *Hayes*, 5 Cush. 458; *Gooch* v. *Stephenson*, 13 Me. 371; *Lang* v. *Scott*, 1 Blackf. 405; *Stafford* v. *Ingersol*, 3 Hill, 38, 41; *Renwick* v. *Morris*, Id. 621, 624; *Turnpike* v. *Coventry*, 10 Johns. 389, 393; *Scidmore* v. *Smith*, 13 Johns. 322; *Colden* v. *Eldred*, 15 Johns. 220; *Wheaton* v. *Hibbard*, 20 Johns. 290, 293; *Crittenden* v. *Wilson*, 5 Cow. 165, 168; *Wetmore* v. *Tracy*, 14 Wend. 250, 255, 256; *Turnpike Co.* v. *People*, 15 Wend. 267; *Carver* v. *Manufacturing Co.*, 2 Story, 432; *Sawin* v. *Guild*, 1 Gall. 485, 486; *Wheaton* v. *Peters*. 8 Pet. 591; *Wood* v. *U. S.*, 16 Pet. 343; *Daviess* v. *Fairbairn*, 3 How. 636; *McCool* v. *Smith*, 1 Black, 459.

The rule that "where a new right is given, and a specific remedy given, for its violation, the remedy is confined to that given by statute," has no application to this case, which is not seeking the remedy for the violation of the new right given by statute, but which is to contest defendants claim to any right whatsoever.

If the statutes of 1790 and 1793 excluded the United States from all common-law remedies, the repeal of that statute must be construed to revive them. The argument that the provision in the act of 1836 allowing the pleading of special matter to avoid patents in actions on them at law was a substitute for the power of repeal, is unfounded, since similar provisions were in the Acts of 1790 and 1793. St. 1790, c. 7, § 6; St. 1793, c. 11, § 6; St. 1819, c. 19; St. 1836, c. 357, § 15; 1 Bl. Comm. 92; *Polk* v. *Wendall*, 9 Cranch, 87; *Spalding's Lessee* v. *Reeder*, 1 Har. & McH. 187, note; *Bladen's Lessee* v. *Cockey*, Id. 230; *Sears* v. *Parker*, 1 Hayw. 126; *University* v. *Johnston*, Id. 373; *Foreman* v. *Tyson*, Id. 496; *Miller* v. *Twitly*, 3 Dev. & B. 14; *Alexander* v. *Greenup*, 1 Munf. 134; *Jackson* v. *Lawton*, 10 Johns. 23; *Jackson* v. *Hart*, 12 Johns. 77; *Whitney* v. *Emmett*, 1 Bald. 303; *Grant* v. *Raymond*, 6 Pet. 218; *Finley* v. *Williams*, 9 Cranch, 164; *Patterson* v. *Winn*, 11 Wheat. 380; *Delano* v. *Scott*, 1 Gilp. 489.

The provisions relating to repeal of patents in the Acts of 1790 and 1793 were remedies given to individuals, not to the United States, (St. 1793, § 10; St. 1790, § 5;) and were supplementary merely to the common-law remedy.

The English patent system, and decisions thereunder, are guides to the construction of our own legislation. *Evans* v. *Eaton*, 7 Wheat. 356; *Pennock* v. *Dialogue*, 2 Pet. 1, 18; *Grant* v. *Raymond*, 6 Pet. 218; *Shaw* v. *Cooper*, 7 Pet. 292; *Wilson* v. *Rousseau*, 4 How. 646; *Hogg* v. *Emerson*, 6 How. 437; *Lowell* v. *Lewis*, 1 Mason, 182; *Whittemore* v. *Cutter*, 1 Gall. 429; *Wyeth* v. *Stone*, 1 Story, 273; *Woodworth* v. *Sherman*, 3 Story, 171; *Woodworth* v. *Rogers*, 3 Woodb. & M. 135; *Sullivan* v. *Redfield*, 1 Paine, 441; *Brooks* v. *Bicknell*, 3 McLean, 250; *Stimpson* v. *Railroad*, 1 Wall. C. C. 164.

The government cannot "remove the taint of *illegality*" from a patent for an *old* invention by authorizing its issue. Congress has no power to authorize the issue of a patent for an *old* invention. In *White Water Valley Co.* v. *Vallette*, 21 How. 414, the legislature *had* the power to remove that taint.

There is no difference in principle between proceedings to cancel patents for land and patents for inventions. *Field* v. *Seabury*, 19 How. 323; *Rubber Co.* v. *Goodyear*, 9 Wall. 788; *Mowry* v. *Whitney*, 14 Wall. 434. See, also, 5 Elliot, Debates, 439; Curt. Pat. (4th Ed.) §§ 8, 503; *Woodworth* v. *Hall*, 1 Woods & M. 389; 1 Op. Atty. Gen. 456.

There is no distinction between the case at bar and *U. S.* v. *Stone*, 2 Wall. 525, and *U. S.* v. *Hughes*, 11 How. 552, and 4 Wall. 232. Both of those were filed by the law officers of the government without special statutory authority. *U. S.* v. *Hughes* showed on its face that the United States had no property in the land covered by the patents sought to be canceled. See, also, *State* v. *Reed*, 4 Har. & McH. 6.

But it is claimed that a void land grant casts a cloud upon the title of the United States as proprietor. But a void patent for an invention casts a cloud upon the rights of every member of the public to use or manufacture the article, and upon the title of the rightful patentee, which equity will protect. *Martin* v. *Graves*, 5 Allen, 601; *Clouston* v. *Shearer*, 99 Mass. 210; *Ex parte Wood*, 9 Wheat. 603.

In *U. S.* v. *Stone*, *supra*, the patent was expressly held void for "want of authority" to issue it. These letters patent sought to be canceled in this action are admitted by this demurrer to have been issued without authority.

Unless the government can maintain this bill there is a failure of justice, since the commissioner of patents is powerless to revoke the patent. *U. S.* v. *Stone*, 2 Wall. 525, 535; Hind. Pat. c. 10, § 7.

There is no distinction in the process to repeal patents provided for in the Acts of 1790 and 1793, between willful and constructive fraud in the procuring of the patent. Bac. Abr. "Trespass," B. The cases cited by defendant (*Stearns* v. *Barrett*, 1 Mason, 153; *Ex parte Wood*, 9 Wheat. 603; *Delano* v. *Scott*, 1 Gilp. 489) do not bear the construction put upon them.

The intention of congress in the several patent acts was to leave the remedy in all cases, except in the particular instances mentioned, to be regulated by principles of *general jurisprudence*, (*Rubber Co.* v. *Goodyear*, 9 Wall. 788;) which is defined to be the general principles of common law, (*Mowry* v. *Whitney*, 14 Wall. 434, 439, 440.) The remedy at common law was *scire facias*, which was maintainable (1) when the king had granted a thing by false suggestion; (2) when he had granted a thing he had no power to grant. The case at bar falls within both of these classes, and the question of motive of the defendant is immaterial, since the injury is done by an outstanding void patent, which on its face is *prima facie* valid. *Whittemore* v. *Cutter*, 1 Gall. 429; *Railroad Co.* v. *Stimpson*, 14 Pet. 448; *Woodworth* v. *Rogers*, 3 Woodb. & M. 153; *Wilson* v. *Barnum*, 1 Wall. C. C. 347; *Delano* v. *Scott*, 1 Gilp. 489, 494; *Whitney* v. *Emmett*, 1 Bald. 303, 315; *Grant* v. *Raymond*, 6 Pet. 218, 242; *Wilson* v. *Rousseau*, 4 How. 646.

This power is necessary to the establishment of a complete system of equity jurisprudence, 7 Dana, Abr. c. 225, art. 1.

Before SHEPLEY and KNOWLES, JJ.

SHEPLEY, J. The information in this case is by "George H. Williams, as he is attorney general of the United States of America," at the relation of George V. Hecker, of the city of New York, against the Rumford Chemical Works, a corporation duly organized under the laws of the state of Rhode Island, and a citizen of said state, and domiciled therein, and against George F. Wilson, a citizen of the state of Rhode Island, as president of said corporation, and its general manager.

The information showeth that letters patent of the United States were on the twenty-second day of April, 1856, granted to Eben N. Horsford for a new and improved preparation or substance being a substitute for a pulverulent acid for use in the manufacture of dry powders and other similar powders when a dry acid is required; that thereafter the letters patent became vested in the Rumford Chemical Works, as assignee of Horsford. Two surrenders and reissues of the patent are then set out in the information, the first reissue being dated May 7, 1867, and numbered 2,597, and the second, June 9, 1868, and numbered 2,979. The reissue 2,979 is alleged to have been wrongfully and fraudulently obtained, and to be null and void by reason of claiming that which is not described in the original letters patent of Horsford, and that which was not the invention of Horsford as described in his original patent. The third claim of the reissued patent is alleged to be void, not only as claiming an invention not described in the original patent, and not the invention of Horsford at the date thereof, but for want of any such description in either the original or reissued letters patent of the invention therein claimed, in such full, clear, and exact terms as to comply in that respect with the requirements of law. The fourth claim is alleged to be void also, because the subject-matter thereof is not described in the original patent, and because the subject-matter of the claim is not described with sufficient accuracy to enable a person skilled in the art most nearly allied thereto to successfully make and use the same.

The information further shows that on the seventeenth of June, 1868, the Rumford Chemical Works filed a bill in equity in the circuit court of the United States for the Southern district of New York, against one John E. Lauer, alleging infringement of letters patent No. 2,979; that Lauer was an employe of the relator, George V. Hecker, and his partner, John Hecker; that the alleged acts of infringement were done in the course of said employment, and the defense of the suit was assumed by the Heckers; that, after a full hearing before his honor, Judge BLATCHFORD, one of the judges of said court, it was adjudged and decreed that the first and second claims of said patent were void for want of novelty; that on or about the thirteenth day of

September, 1869, the Rumford Chemical Works filed another bill in equity, in the same court, against the Heckers, alleging infringement of said letters patent No. 2,979; and that thereupon, and after the decree in the suit in equity against Lauer, upon the application of the complainant, the cause against Lauer was reopened and further proofs were taken in the cause. Proofs were also taken in the cause against the Heckers, and, by stipulation of the parties, the testimony taken in the *Lauer Case* was used in the *Hecker Case*, and, after a full hearing, it was adjudged and decreed in both cases that the first, second, and third claims of reissued patent No. 2,979 were void for want of novelty, and that the defendant George V. Hecker had infringed the fourth claim of said letters patent.

An allegation is then made that the question of the validity of the fourth claim was not argued or heard in that trial, and that it is invalid for the reasons before stated; that the cause was referred to a master to take account of profits made by the defendants in infringement of the fourth claim, and it does not appear that such accounting has been completed, or any final decree made in the cause. The information sets out the grounds upon which the court adjudged and decreed the first, second, and third claims of the patent to be void for want of novelty, and also the grounds upon which it is now alleged that the first, second, third, and fourth claims of the reissued patent are void for want of novelty or patentability; and that, before the expiration of the original term for which letters patent were granted, the same were extended for the term of seven years, and the extended term was duly assigned to the Rumford Chemical Works. The information proceeds to give the requisite notice of prior publications relied upon to prove that Horsford was not the original and first inventor of the inventions described and claimed in the several claims of the patent.

Allegation is then made that, since the filing of the bills against Lauer and Hecker, the Rumford Chemical Works have instituted a large number of suits, in different circuits, against persons charged with infringing reissue No. 2,979, which alleged infringements consist, in some cases, in the resale of packages of flour prepared and sold to them by Hecker, for which preparation and sale the Heckers, and Lauer, their employe, were sued in the aforementioned suits; that, all such suits being against customers of the said Heckers, they are obliged to assume the defense, and that thereby they are subjected to great vexation and expense, inasmuch as in those suits the complainant endeavors to maintain the validity of all the claims of the patent. The information further alleges that the Rumford Chemical Works has instituted a suit in equity against George V. Hecker, in the circuit court of the United States for the district of New Jersey, for alleged infringement of reissue No. 2,979, and threatens to institute other suits against other defendants for using and selling the same flour for the making and using of which the Heckers were sued in the Southern district of New York; that although the fourth claim of the patent was adjudged to be valid, yet the informant believes that the decree was unadvisedly made, and that the judgment of the court sustaining said claim cannot be revised at the private instance of the defendants therein, save by the supreme court of the United States, on appeal from the final decree, which final decree cannot be made until the completion of the accounting, and during the pendency of the accounting the decree is being used for harassing and vexatious litigation under said claim; that there are valid and subsisting patents, granted according to law and now owned by the Heckers, the use of the inventions secured by said patents being greatly impeded and injured by the aforesaid doings of the Rumford Chemical Works, and by the existence of the reissued patents aforesaid. The prayer is that the reissued patent No. 2,979 should be declared void, and be canceled and annulled, and that the Rumford Chemical Works be enjoined from prosecuting any suit at law or in equity for alleged infringements of the

same.   The bill is signed by George H. Williams, attorney general of the United States, by John A. Gardner, attorney of the United States in and for the district of Rhode Island.   A motion was made and filed to set aside the service of the subpœna, and take the information from the files.   The evidence offered under this motion was ordered to be filed and made a part of the record in the cause.

Inasmuch as the principal questions presented on the hearing of the motion are raised by the demurrer, the court decided to hear the parties on the bill and demurrer, and further consideration of the motion is unnecessary.   Defendants demur to the bill on the grounds, briefly stated—*First*, that informant does not state any case which entitles him to relief against these defendants; *second*, that the informant had no lawful authority to file this information; *third*, that the information and this proceeding are not in the name or in behalf of the United States; *fourth*, that the informant, "as he is attorney general of the United States," had no lawful authority to file this information; *fifth*, that the informant has not signed the said bill or information, nor has counsel signed the same; *sixth*, that this court has no jurisdiction under the constitution and laws of the United States, to entertain this information and proceed therewith; *seventh*, that this court has no jurisdiction to entertain the said information, or to proceed therewith, because it appears that the United States are not parties thereto, or petitioners or plaintiffs therein; *eighth*, that this court has no jurisdiction, because it does not appear that the parties are citizens of different states.

A patent for a useful invention is not, under the laws of the United States, a monopoly in the old sense of the common law.   The whole patent system of the United States rests upon the basis of the constitutional provision conferring upon congress the power to promote the progress of science and the useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries.   So long as such writings and discoveries were not communicated to the public, authors and inventors had a possession of, which was equivalent to a property in, their writings and discoveries.   When communicated to the public, by the common law that property was lost.   In consideration that an inventor will disclose the secret of his invention, and put it in immediate practice, and afford to the public the opportunity to practice it, when it becomes public property at the expiration of the term of the patent, the government grants to the author of a new and useful invention the exclusive right in that invention for a term of years.   This grant is not the exercise of any prerogative to confer upon one or more of the subjects of a government the exclusive property in that which would otherwise belong to the common right.   It more nearly resembles a contract, which under the authority conferred by the constitution, congress authorizes to be entered into between the government and the inventor, securing to him, for a limited time, the exclusive enjoyment of the practice of his invention, in consideration of the disclosure of his secret to the public, and his relinquishment of his invention to the public at the end of the term.   To the legislation of congress, and to this alone, we must resort, under our form of government, for guidance as to the extent, limitations, and conditions of the respective rights of inventors and the public, and as to the forms of remedy and the remedial jurisdiction, as well as the remedy itself, under our system of patent law.   So far as any inquiry may relate to the relations between the government and the grantee of letters patent of the United States, but little light can be reflected from the English decisions.   Originating, as their system of patent law did, in a supposed right of the king, residing in his royal prerogative, to create monopolies, and continued under the authority of the act of Parliament of 21 James I., which, while prohibiting by the statute of monopolies the granting of exclusive privileges in trade, excepted letters patent for the sole working or making of any manner of new manufacture within the realm

to the first and true inventors of such manufactures, it evidently rests upon a different basis from a system founded solely upon the express grant of power in a written constitution.

As in England the grant of a patent is a matter of grace and favor, the crown may annex any conditions it pleases to the grant. Every English patent contains a proviso which makes the grant it contains revocable by the queen, or by any six of her privy council, for certain causes, which are mentioned in the proviso. These causes are stated in the proviso to be, if the grant be contrary to law, or prejudicial or inconvenient to her majesty's subjects, or if the invention was not new, or not invented by the patentee. Hind. Pat. *c.* 10, § 7. This provision is an affirmance of the law that the queen cannot do anything against the law, or against right and justice; hence the maxim that the queen cannot do wrong. Therefore all her letters patent which are contrary to law or common justice, or which are to the prejudice of the commonwealth, or to the general injury of the people, are null and void, and every grant from the queen has this condition either expressly or tacitly annexed to it, that it be not a grievance or prejudice to her majesty's subjects, and if a grant be contrary to this condition it is void. Co. Litt. 90 B; Chit. Prerog. 178; Bac. Abr. "Prerog." F 2; Shep. Abr. "Prerog." pt. 3, 48, §§ 5, 7. The statute of monopolies, 21 Jac. I. *c.* 3, § 6, provides also that patents for inventions "shall not be contrary to law, nor mischievous to the state by raising prices of commodities at home, or hurt of trade or generally inconvenient." Letters patent are not demandable in England as matter of right. In practice they are rarely refused, but are granted on application properly made, the reason being that the grant is entirely at the risk of the petitioner for the patent. As the letters patent issued under the great seal, and the enrollment of every patent remained of record in the court of chancery, the lord chancellor, in the common-law court of chancery,—or, in the words of Sir Edward Coke in the fourth institute, the "one ordinary *coram domino rege in cancellaria*, wherein the lord chancellor or lord keeper of the great seal proceeds according to the right line of the laws and statutes of the realm *secundum legem et consuetudinem angliæ*,"—has power to hold plea of *scire facias* to repeal letters patent under the great seal, and to cancel the patent, and also the enrollment of it. *King* v. *Butler*, 3 Lev. 221, and 2 Vent. 344. The *scire facias* being a judicial writ, and founded upon a record, properly issued from the court of chancery, as the patent was a record in chancery. Sir Edward Coke says, (4 Inst. 88:) "Our lord chancellor of England is called *cancellarius*, *a cancellendo, i. e., a digniori parte;* being the highest point of his jurisdiction to cancel the king's letters patent under the great seal, and damning the enrollment thereof by drawing strikes through it like a lattice." The form of a writ of *scire facias*, which issued from the court of chancery, commanded the sheriff to give notice to the patentee to appear in chancery, and show why the letters patent and enrollment should not be canceled, and the letters patent restored into chancery, there to be canceled.

These legal proceedings were in the office called the "Petty Bag," the office of the court of chancery, in which all common-law proceedings of the court were carried on, all the pleadings and other common-law proceedings being entitled, "In the Petty Bag Office in Chancery." The action of *scire facias* was not only a remedy provided by law for the crown in behalf of the public, but also for any subject of the crown who could show that a void or illegal patent operated to his prejudice. Thus, in *Butler's Case*, before cited, Lord Chancellor FINCH said: "Where a patent is granted to the prejudice of the subject, the king, *of right*, is to permit him upon his petition to use his name for the repeal of it." Every person is presumed to have such an interest in a patent for an invention that, if he alleges that it is illegal or void, he is entitled, as of right, to a *scire facias in the name of the queen*, in order to repeal it. *Queen* v. *Aires*, 10 Mod. 354; *Queen* v. *Ballivos*, 1 P. Wms. 207;

Vin. Abr. "Prerogative," T. b.; U. b. 8. Such proceedings were always in the name of the crown. "The only means which the law provides for the repealing of letters patent [for inventions] is by action of *scire facias* at the suit of the queen," (Hind. Pat. 64,) and, as we have seen, this was a *quasi* common-law proceeding, with the right of trial by jury. This right, and this mode or proceeding, was preserved by the express provisions of the modern statutes, which, while providing for a new seal to patents, and for filing the specifications in such office as the new commissioners might designate, also enacted that "the writ of *scire facias* shall lie for the repeal of any letters patent issued under this act in the like case as the same would lie for the repeal of letters patent which may now be issued under the great seal." No instance can be found, it is believed, of any other proceeding in England than a *scire facias* to repeal letters patent for an invention. It is contended in the case at bar that the case of *Attorney General* v. *Vernon*, 1 Vern. 277, is an authority for the repeal of letters patent by a bill in chancery. But this case was without a precedent, and has never been followed in England, and cannot be claimed to be a precedent for a bill in equity to repeal letters patent for an invention which issue under the great seal, and are recorded in chancery. The question related to letters patent which purported to grant to Col. Vernon certain rights and privileges connected with the honor of Sudbury, and the manor of Sudbury, and other landed estates. Lord Chief Baron MONTAGUE, as to the objection that there was no precedent of any such suit brought into this court, said: "This court creates precedents," and the Lord Chancellor JEFFRIES, in allusion to what had been proved in the case, that Vernon had been a devoted and loyal adherent of the late King Charles I., and had by reason thereof suffered greatly in his person and estate, and been imprisoned in the Tower, answered: "That Col. Vernon has been very loyal, and that his service and sufferings for the crown have been considerable, must be admitted;" but he goes on to decree that the patent must be delivered up and canceled upon two grounds —*First,* that "Col. Vernon had before that time tasted of the king's bounty both in England and Ireland;" and also, "though Col. Vernon was an honest gentleman and of good quality, the honor of Sudbury is of that vast extent, and so many noblemen hold of it that it is not fitting for a person of his degree."

Comparing the system of rights and remedies, so far as they refer to the relations between the government and the subject in England and this country, we find these strongly marked differences: Letters patent for inventions in England are grants made by the crown *de gratia speciale;* the words "of our special grace" in the patent importing that the grant proceeds merely from the grace and bounty of the crown, the grantee having no right or title to the grant, except through the favor of the crown. 2 Co. Inst. 78; Hind. Pat. 50. In this country they are issued, neither in fact nor by publication, by any special grace or favor, and in no sense *ex mero motu,* but as a matter of right, under the provisions of a statute, to the inventor who has complied with the conditions which the statute imposes. In England, before the statutes of 12 & 13 and 15 & 16 Vict., the letters patent issued under the great seal, and were on record in the court of chancery. In the United States the record of the patent is in the patent-office, and under the seal of the patent-office. In England the patent issues to the applicant as a matter of course on his application, the grant being entirely at the risk of the petitioner. By our statute the letters patent are not issued until the commissioner of patents has caused an examination to be made, and until it appears, upon such examination, that the claimant is justly entitled to a patent under the law, and that the same is sufficiently new and important. From the decision of the examiner, or of the examiner-in-chief in charge of the interferences, an appeal is provided to the board of examiners, and from their decision the party dissatisfied may appeal to the commissioner in person. If such party, except a party to an interference, is

dissatisfied with the decision of the commissioner, he may appeal to the supreme court of the District of Columbia, sitting *in banc;* and after all these proceedings, if the patent be refused, the applicant may have a remedy by bill in equity. Also, in case of interfering patents, the remedy is not by *scire facias* at the instance of the relator, as in England, but the statute provides for a suit in equity by the owner or other person interested in the working of the invention, brought against the owner of the interfering patent. In England the law gives to the party aggrieved by the issue of the letters patent his right to his remedy of *scire facias,* brought and conducted at his expense by the attorney general, in the name and in behalf of the queen, to repeal the patent. No statute in this country confers or recognizes the existence of any such right, nor can any precedent be found for the suing out of a writ of *scire facias,* or the bringing of a bill in equity to repeal the patent by the attorney general in the name and behalf of the United States, either with or without a relator.

Under our system of patent law, where the issue of letters patent is either a *quasi* decision at the patent-office, or an actual judicial decision on appeal from the commissioner's decision, and where the statute so carefully guards the rights of defendants in actions brought by owners of patents, we could entertain no doubt, in the absence of any statute provisions authorizing proceedings by the attorney general of the United States, either as in this instance, in his own name, "as he is attorney general," or in the name and behalf of the United States, that no right to institute such a proceeding existed, were it not for the high respect which this court entertains for any suggestion coming from the supreme court of the United States, whose decisions are binding upon this court, and whose *dicta* even are entitled to be treated with the respect and consideration due the high authority and profound learning of that court.

The case of *Mowry* v. *Whitney,* 14 Wall. 434, was one of two interfering patents. Mowry having been sued by Whitney for practicing the invention described in Mowry's patent, which Whitney alleged to be an infringement of his (Whitney's) prior, existing, and extended patent; and, Whitney having obtained a decree against Mowry in that suit in chancery, Mowry filed, in his own name, a bill against Whitney, alleging in substance that Whitney had obtained the extension of his patent by false suggestion, by falsely representing that his profits under the patent had been very small, when, in fact, they had been very large. There was a demurrer to the bill upon the grounds—*First,* that the extended patent had expired by its own limitation before the bill was filed; *second,* that the complainant could not, in his own right, maintain such a suit. The court did not deem it necessary to decide the first point. In deciding the second, the court, (Mr. Justice MILLER,) stating the ancient mode of vacating a patent in the English courts by *scire facias,* states the three cases in which this may be done in those courts: *First,* when the king, by his letters patent, has by different patents granted the same thing to several persons, the first patentee shall have a *scire facias* to repeal the second; *second,* when the king has granted a thing by false suggestion he may by *scire facias,* repeal his own grant; *third,* when he has granted that which by law he cannot grant, he, *jure regis,* and for the advancement of justice and right, may have a *scire facias* to repeal his own letters patent. The learned judge then, observing that the sixteenth section of the patent act of 1836 seems to have in view the same distinction made by the common law in regard to annulling of patents, proceeds to decide that the remedy under that section, to try the conflicting claim in chancery, is limited to individuals claiming under conflicting patents, or one whose claim to a patent has been rejected because his invention was covered by a patent already issued, and authorizes the court to annul or set aside a patent so far as may be found necessary to protect the right, and that the suit by individuals is limited to that class of cases, and that the general public is left to the protection of the government and its of-

ficers. The case decided, and only decided, that an interfering patentee or an individual could not, in his own name or in his own right, maintain such a bill in equity to vacate a patent upon the ground of false suggestion or fraud in obtaining the patent. The authority of this decision, or the conclusiveness of the reasoning in support of the decision, has never been doubted. In England, when the king had granted letters patent for an invention by false suggestion, the *scire facias,* brought by the king's attorney general, to repeal the king's own grant, was in the king's name and on his own behalf, and not at the suit of a subject. And here, by the act of 1836, it was not intended to confer upon an interfering patentee the right to try such a question by a suit in his own name, which would be conclusive only *inter partes,* and leave the same question open, as the court in that case observes, to innumerable vexatious suits to set aside the patent, since a decree in favor of the patentee in one suit would be no bar to a suit by another party. It is true that, in deciding this question, the learned judge says, what is unquestionably true, that "the general public is left to the protection of the government and its officers" in cases like the one alleged in *Mowry* v. *Whitney,* of false suggestion or fraud in obtaining a patent. The court did decide that "no one but the government, either in its own name or the name of its appropriate officer, or by some form of proceeding which gives official assurance of the sanction of the proper authority, can institute judicial proceedings for the purpose of vacating or rescinding the patent which the government has issued to an individual, except in the cases provided for in section 16 of the act of July 4, 1836." The court did not decide, and in that case was not called upon to decide, what protection to the general public, by the government and its officers, had been provided by law; or whether, in the absence of any express statute provision, or in addition to such statute provisions as are designed to protect the rights of the general public, any further and additional right exists in any executive department of the government to institute any form of proceeding to repeal the grant, by virtue of any supposed prerogative, or any supposed relation of the government to the general public, like that under which the king *jure regis* may institute proceedings to repeal his own grant, or as *parens patriæ* may intervene in his own name for the benefit of his subjects, at their relation and expense, to repeal a grant supposed to be prejudicial to them. Whether any power had been conferred by statute upon any officer of the government to institute such proceedings, or whether any such right or power existed anywhere in the executive department, in the absence of statute provisions conferring the power and prescribing the mode of proceeding, is a question which the court can only decide "when a case arises in which the United States or the attorney general shall initiate a suit to have a patent declared null *ab initio,*" and the court, in the language last quoted, defers its decision upon the effect of such a proceeding (under a particular state of facts stated in the opinion) to the time when such a case shall arise.

This leads us to the consideration of the protection afforded by the provisions of the patent acts to the rights of the general public, and to the history of the legislation upon that branch of the subject. The fifth section of the act of 1790, the first act of congress in relation to the subject, (1 St. at Large, 111,) provided a form and mode of proceeding to repeal a patent "obtained surreptitiously, by or upon false suggestion," upon complaint made under oath before the judge of the district court where the defendant resided, and motion within a year after issuing of the patent, but not afterwards. The patent issued under this act without any oath of the applicant and any previous examination, and want of novelty and originality are not included in the list of defenses authorized by the sixth section. The act of 1793 extended the time of limitation for commencing proceedings to repeal the patent to three years, and enlarged the defenses in actions for infringement, opening

the defenses of want of novelty and originality. These provisions clearly show that it was deemed necessary that authority for proceedings to repeal letters patent conferred by statute.

In *ex parte Wood*, 9 Wheat. 609, the courts say: "As the patents are not enrolled in the records of any court, but among the rolls of the department of state, it was necessary to give some directions as to the character, time, and manner of instituting proceedings to repeal them." These acts of 1790 and 1793, including these provisions conferring jurisdiction upon the federal courts, over proceedings for the repeal of letters patent, were repealed by the act of 1836. That act was substantially re-enacted and codified by the act of 1870, and in the Revised Statutes of 1874. The act of 1836 contained no provision authorizing any proceeding to repeal letters patent upon the ground that they were obtained "surreptitiously, by or upon false suggestion;" but the sixteenth section provided a remedy in the case of conflicting patents, and for a repeal of the one which the court should adjudge had been improvidently issued. This takes the place of the remedy to which, in case of conflicting grants, the subject is entitled to, as matter of right, in England.

For the protection of the general public, in place of the provision for a proceeding in the nature of a *scire facias* to repeal the patent, to be instituted within three years, as provided in the act of 1793, it sought to provide safeguards against the issue of letters patent upon false suggestion, and ample security against any injury to the citizen, to whom it opened every possible defense against injury resulting from any mistake or oversight of the commissioner in issuing the patent. In fact, every defense against a patent that can well be imagined was left open to the citizen whose interests were affected by it, excepting only the one which in *Whitney* v. *Mowry* the supreme court decided was not open,—the question of fraud upon the government in obtaining the grant. To guard against such a fraud, it provided for the examination by the examiner, and for a commissioner, and the subsequent proceedings hereinbefore stated; it being made the duty of the examiner and the commissioner to protect the rights of the public. The jurisdiction conferred by Acts of 1790 and 1793 upon the federal courts to repeal a patent, and which, without express grant, it is believed did not inhere in those courts, is nowhere conferred by the Acts of 1836 or 1870 or in the Revised Statutes of 1874. It would seem to be a great stretch of power and assumption of jurisdiction for one circuit court, in the absence of any such express authority conferred by act of congress, to repeal and vacate a patent which may have been originally granted upon the decree of another circuit court, upon appeal from the commissioner, and adjudged valid, perhaps, in litigation respecting it, in still another circuit court in another circuit. The better opinion upon this brief and imperfect review of the legislation of congress upon this subject would seem to be that congress had deliberately transferred the jurisdiction over the question of the protection of the rights of the general public, to the *quasi* judicial decision of the examiner and the commissioner, or the actual judicial decision of the federal courts upon appeal from the commissioner, and fully protected the rights of the individuals against whom the patents might be sought to be enforced by opening to them every defense essential to the preservation of their rights and the protection of their interests.

The decision in the federal courts, sustaining proceedings in equity to vacate letters patent granting lands obtained by fraud, furnish no precedent in case of letters patent for inventions. The United States as an owner of lands, has equal rights, and is entitled to equal remedies, with an individual owner. In granting lands, the United States conveys that in which it has the fee. In issuing letters patent for inventions, nothing is granted which belonged before to the United States. The issue of the letters patent is in compliance with an act of congress. The rights and remedies of the parties are dependent solely on the statute enactments, and do not grow out of any previous

ownership of the supposed subject of the grant, as in the case of a conveyance of lands. But if this court has jurisdiction over any proceeding to vacate a patent, and declare it null *ob initio*, upon the ground of false suggestion, or the ground that the government has undertaken to grant that which by law it cannot grant, it is perfectly clear that "the attorney general of the United States, as he is attorney general," has no authority, as such, and in his own name, to file an information or commence proceedings by bill in equity. It is undoubtedly in the power of congress to confer upon any public officer the authority to commence suits in his own name on behalf of the United States. Such authority has been conferred by statute upon the postmaster general to institute suits in his own name for the recovery of debts and balances due the general post-office. No such authority to institute suits in his own name has been conferred by statute upon the attorney general. In the absence of any such authority, the information (if the court has jurisdiction to entertain it) should be in the name of the United States, and, I think, should be filed by the attorney of the United States, in the district in which the information is filed, "in the name and behalf of the United States." The United States, then being a party to the proceedings, it would not abate by the death or resignation of the public officer who filed it. George H. Williams has resigned, and ceased to be attorney general; as an individual he cannot maintain his proceeding. The United States is not made a party; the relator is not the party. "The relators are not plaintiffs." *U. S.* v. *Doughty*, 7 Blatchf. 424; *Attorney General* v. *The Mayor*, 1 Moll. 95; *Attorney General* v. *Wright*, 3 Beav. 447. "Relators should know they are not parties to informations, and have no right, of their own authority, to make any application to the court." There is no party plaintiff before the court, unless it be George H. Williams as an individual citizen. "This court can recognize the United States as a plaintiff on the record only when the record shows that the United States appears as plaintiff, by the district attorney of this district." *U. S.* v. *Doughty*, 7 Blatchf. 425. In England the *scire facias*, in the common-law division, or in the petty bag in chancery, to repeal a patent, was always in the name of the sovereign. "The *scire facias*," says Lord CAMPBELL in *Reg.* v. *Archipelago Co.*, 1 El. & Bl. 351, "in all cases must be in the name of the king." The form of the writ recites that A. B., "attorney general for our said lady, the queen, who for our said lady, the queen, prosecutes in this behalf;" and that this has been the invariable rule in England will appear by an examination of every reported case in that country, in which this jurisdiction to repeal letters patent by *scire facias* has been exercised.

In *Benton* v. *Woolsey*, 12 Pet. 27, where no objection was made to an information filed by the district attorney "in behalf of the United States," the court thought, in the absence of any objection, "the United States may be considered the real party, though in form it is the information and complaint of the district attorney." The usual and proper mode is for the district attorney to file an information in the *name* and in behalf of the United States, and probably only in that form could one be sustained, if objected to. The power (conferred by section 359 of the Revised Statutes of the United States on the attorney general) to, in person, conduct and argue any case in any court of the United States in which the United States is interested, or to direct the solicitor general, or any officer of the department of justice, to do so, clearly does not authorize him to bring such suit in his own name, or authorize the solicitor general or any officer of the department of justice to do so. If the power given to him, wherever he deems it for the interest of the United States to conduct and argue any case in any court of the United States in which the United States is interested, confers upon him any authority to commence or institute proceedings, except through the district attorneys, who are subject to his orders and supervision, which is at least doubtful, there is no right expressly given, or to be implied from any words in this or any other statute, to

bring the suit in his own name, instead of in the name of the real party, the United States.

The conclusion, therefore, follows that this information to repeal letters patent for an invention, being in the name of George H. Williams, as he is attorney general of the United States, and not in the name and behalf of the United States, is not authorized by any statute, sanctioned by any precedent, or supported by the authority of any judicial decision; and the demurrer must be sustained, and the information dismissed.