## MOWRY v. WHITNEY.

1. The ancient mode of annulling or repeating the king's patent was by *scire facias* generally brought in the chancery where the record of the instrument was found.

2. In modern times the court of chancery, sitting in equity, entertained a similar jurisdiction by bill when the ground of relief is fraud in obtaining the patent, and in this country it is the usual mode in all cases, because better adapted to the investigation and to the relief to be administered.

3. But *scire facias* could only be sued out in the English courts by the king or his attorney-general, except in cases where two patents had been granted for the same thing to different individuals, and the sixteenth section of the act of July 4th, 1836, concerning patents for inventions, is based upon analogous principles.

4. Both upon this authority and upon sound principle no suit can be brought to set aside, annul, or declare void, a patent issued by the government, except in the class of cases above mentioned, unless brought in the name of the government or by the authority or permission of the Attorney-General, so as to be under his control.

APPEAL from the Circuit Court for the Eastern District of Pennsylvania; the case being thus:

Asa Whitney, of Philadelphia, had obtained, on the 25th April, 1848, a patent for fourteen years for an improvement in annealing and cooling cast-iron car-wheels. This patent expired, of course, by its terms on the 25th of April, 1862.

Just before its expiration, that is to say, on the 21st of March, Albert Mowry, of Cincinnati, also obtained a patent for fourteen years, for a process for annealing car-wheels, of which *he* professed to be the inventor.

In March, 1862, Whitney—the expiration of his patent now approaching—applied to the Commissioner of Patents for an extension of the patent for seven years more. This extension was applied for in pursuance of a provision of the Patent Act of 1848,* which authorizes an extension where the patent has not been remunerative, and the act, therefore,

---

* Act of May 27th, 1848, 6 Stat. at Large, 231, amending the act of July 4th, 1836; 5 Id. 124.

requires that the patentee when applying for the extension shall—

"Furnish to the Commissioner of Patents a statement in writing, under oath, of the ascertained value of the invention, and of his receipts and expenditures sufficient in detail to exhibit a true and faithful account of loss and profit, *in any manner*, accruing to him from, and by reason of, the said invention."

Whitney did furnish to the commissioner a statement, which purported to be such as the act required; and accordingly the extension was granted April 25th, 1862, for seven years from that date, or in other words, until 25th of April, 1869.

On the 21st of March, 1866, Whitney filed a bill in the Circuit Court for the Southern District of Ohio, to enjoin Mowry against proceeding in his business of annealing car-wheels, on the ground that he Mowry by his process of annealing was infringing his Whitney's patent; and it being decided in the Circuit Court April 5th, 1867, on the hearing of the case, that Mowry was by his plan of annealing, infringing Whitney's patent, the question of damages came up. This being referred to a master, Whitney, in order to swell his damages, sought to prove (as Mowry alleged) that his profits had been very large; greatly larger than what he had sworn they were in the statement which he made before the commissioner, when seeking his extension.*

Hereupon, April 7th, 1870, Mowry filed a bill in chancery in the court below, representing the fact of Whitney's patent, and of the extension of it (annexing as exhibits all the patent, the certificate of extension, and all the affidavits and estimates on which the extension had been granted); setting forth his own patent, that he was sued by Whitney in a suit still pending; that in the progress of investigation necessary to his defence in that suit he had discovered the fraud by which the extension was obtained, and praying that it might be declared that Whitney's letters, granted on the 25th of April, 1848, and extended on the 7th of April, 1862,

---

* For an account of this controversy see *infra*, p. 621

were, and are void and of no effect from and after the 25th of April, 1862.

The Patent Act of 1836,* it should be added, by its 16th section thus enacts:

" That whenever there shall be two interfering patents, or whenever a patent, on application shall have been refused on an adverse decision of a board of examiners, on the ground that the patent applied for would interfere with an unexpired patent previously granted, any person interested in any such patent either by assignment or otherwise, in the one case, and any such applicant in the other case, may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge and declare either the patents void, in the whole or in part, or inoperative and invalid in any particular part or portion of the United States, according to the interests which the parties to such suit may possess in the patent or the inventions patented; and may also adjudge that such applicant is entitled according to the principles and provisions of this act to have and receive a patent for his invention as specified in his claim, or for any part thereof, as the fact of priority of right or invention shall in any such case be made to appear. And such adjudication, if it be in favor of the right of such applicant, shall authorize the commissioner to issue such patent, on his filing a copy of the adjudication and otherwise complying with the requisitions of this act: *Provided, however,* That no such judgment or adjudication shall affect the rights of any person except the parties to the action, and those deriving title from or under them, subsequent to the rendition of such judgment."

To the bill filed as above mentioned by Mowry, Whitney demurred, on these two, among other grounds:

1. That it appeared from the bill that the government of the United States was a necessary party complainant, but that the government was not made a party, nor was the suit brought at the instance of, nor by the authority, nor with the consent of the government.

2. That it appeared by the bill that the term for which

---

* 5 Stat. at Large, 124.

the letters-patent sought to be cancelled were granted and extended had expired before the commencement of the suit.

The court below sustained the demurrer on these grounds and dismissed the bill. From that decree Mowry took this appeal.

*Messrs. A. G. Thurman and C. B. Collier, for the appellant:*

The bill charging and the demurrer confessing that the extension was procured by fraud, the extended patent must be regarded as void, *ab initio*, and as conferring no monopoly upon the patentee as against the public or the complainant.

Notwithstanding the expiration by limitation of Whitney's patent prior to the filing of the bill, the extended patent, until declared void for fraud, was and is alive and in effect for all purposes of suit for infringements of it that occurred during its existence.*

By reason of the fact that Whitney's patent had expired prior to the filing of the complainant's bill, the government was neither a necessary nor a proper party to the bill, and by reason of such expiration the bill could not have been maintained in the name of the government, it having no interest in the subject-matter of the controversy.†

Mowry, as appears on the face of his bill, has a direct and personal interest in the subject-matter of the suit; he is sued by Whitney for an alleged infringement of his patent in the Circuit Court for Ohio; he cannot avail himself of the fraud of the patentee as matter of defence to the suit in that court and in that cause; he is without remedy save in the court and according to the manner in which he has sought it by this proceeding.‡

The extension of the patent having been confessedly procured fraudulently, and the government not being able to maintain a suit in relation to the patent by reason of its expiration, and having no further interest in it, the suit was properly and could only be brought by one who had a

---

* Patent Laws, act of 1870, § 55.
† Bourne v. Goodyear, 9 Wallace, 811
‡ Wood v. Williams, 1 Gilpin, 517.

continuing interest in the patent, and whose rights were, notwithstanding its expiration, affected by it.

The primary object of the suit is that the complainant may be relieved from a prosecution which is contrary to equity and good conscience, and the court is asked to find and declare that the patent, having been procured fraudulently, was *ipso facto* void as antecedent to obtaining the relief prayed for.

*Mr. Henry Baldwin, Jr., contra:*

There is no provision of law for any such proceeding as this to repeal a patent; and any proceeding for that purpose must be at the instance of the government. Instead of this bill being filed by the authority or with the consent of the government, it is on its face filed by an adjudged infringer against a patentee whose rights he has invaded, and whose statute remedy he now seeks to enjoin.

The demurrer admits the facts stated in the bill only so far as they are relevant and well pleaded. On the complainant's own showing, the allegations of fraud and suppressions and concealment stated in the bill are refuted by the exhibits annexed thereto and making part thereof.

The account rendered by the respondent to the Commissioner of Patents in connection with his application for extension, and a copy of which is annexed to the bill, is a public document on file and of record in the United States Patent Office at Washington City, for more than eight years prior to the commencement of this suit. During all this time it has been accessible to the knowledge and inspection of this appellant. Upon recourse to these records he could have discovered what he now relies on as newly-discovered evidence.[*]

The bill shows that the extended term of the respondent's patent expired April 24th, 1869, while this proceeding was not commenced until April 7th, 1870, nearly twelve months thereafter.

---

[*] Rubber Co. v. Goodyear, 9 Wallace, 805; Lord v. Goddard, 13 Howard, 198 (211); Truly v. Wanzer, 5 Id. 141 (143).

There is consequently no equity to support this application to set the extension aside, nor does anything remain which can be the subject of a suit.*

Mr. Justice MILLER delivered the opinion of the court.

The bill was demurred to, and the demurrer sustained, on two grounds:

*First.* That the extended patent had expired, by its own limitation, before the bill was filed; and

*Secondly.* That the complainant could not, in his own right, sustain such a suit.

As regards the first of these propositions we do not deem it necessary to make any decision. When a case arises in which the United States, or the Attorney-General, shall initiate a suit to have a patent declared null, *ab initio*, which, though no longer in force as to present or future infringements, is used to sustain suits for infringements during its vitality, the question will be considered; for we are of opinion that no one but the government, either in its own name or the name of its appropriate officer, or by some form of proceeding which gives official assurance of the sanction of the proper authority, can institute judicial proceedings for the purpose of vacating or rescinding the patent which the government has issued to an individual, except in the cases provided for in section sixteen of the act of July 4th, 1836.

The ancient mode of doing this in the English courts was by *scire facias*, and three classes of cases are laid down in which this may be done.

1. When the king by his letters-patent has by different patents granted the same thing to several persons, the first patentee shall have a *scire facias* to repeal the second.

2. When the king has granted a thing by false suggestion, he may by *scire facias* repeal his own grant.

3. When he has granted that which by law he cannot

---

* Bourne v. Goodyear, 9 Wallace, 811; Minnesota Co. v. National Co., 3 Id. 332.

grant, he *jure regis*, and for the advancement of justice and right, may have a *scire facias* to repeal his own letters-patent.*

The *scire facias* to repeal a patent was brought in chancery where the patent was of record. And though in this country the writ of *scire facias* is not in use as a chancery proceeding, the nature of the chancery jurisdiction and its mode of proceeding have established it as the appropriate tribunal for the annulling of a grant or patent from the government. This is settled so far as this court is concerned by the case of the *United States* v. *Stone*,† in which it is said that the bill in chancery is found a more convenient remedy. A bill of this character was also sustained in the English chancery in the case of the *Attorney-General* v. *Vernon*,‡ on the ground of the equitable jurisdiction in matters of fraud. And in the case of *Jackson* v. *Lawton*,§ Chancellor Kent says that in addition to the writ of *scire facias*, which has ceased to be applicable with us, there is another remedy by bill in the equity side of the court of chancery.

It will be observed that in the case of a conflict under two patents granting the same right, the *scire facias* may, according to the authorities cited, be brought in the name of one of the patentees, but in the other cases, when the patent was obtained by a fraud upon the king, by false suggestion, or where it was issued without authority, and for the good of the public and right and justice it should be repealed, the writ is to issue in the king's name or his attorney-general's. It is also said that when a patent is granted to the prejudice of the subject, the king of right is to permit him upon his petition to use his name for the repeal of it, in *scire facias* at the king's suit.‖

The 16th section of the Patent Act of 1836 seems to have in view the same distinction made by the common law in regard to annulling patents, for while it authorizes individuals claiming under conflicting patents, or one whose claim

---

* 4 Institutes, 88; Dyer, 197–8, and 276, 279.       † 2 Wallace, 525.

‡ 1 Vernon, 277.                                      § 10 Johnson, 24

‖ The King *v.* Sir Oliver Butler, 3 Levinz, 220.

to a patent has been rejected because his invention was covered by a patent already issued, to try the conflicting claim in chancery, and authorizes the court to annul or set aside a patent so far as may be found necessary to protect the right, the suit by individuals is limited to that class of cases. And it is provided that the decree shall be of no validity except between the parties to the suit. The general public is left to the protection of the government and its officers.

It seems reasonable that the remedy by bill in chancery, which is substituted for the *scire facias*, should have the like limitation in its use. The reasons for requiring official authority for such a proceeding are obvious. 1. The fraud, if one exists, has been practiced on the government, and as the party injured, it is the appropriate party to assert the remedy or seek relief. 2. A suit by an individual could only be conclusive in result as between the patentee and the party suing, and it would remain a valid instrument as to all others. 3. The patentee would or might be subjected to innumerable vexatious suits to set aside his patent, since a decree in his favor in one suit would be no bar to a suit by another party. If, on the other hand, an individual finds himself injured, either specially or as a part of the general public, it is no hardship to require him to satisfy the Attorney-General that the case is one in which the government ought to interfere either directly by instituting the suit, or indirectly by authorizing the use of its name, by which the Attorney-General would retain such control of the matter as would enable him to prevent oppression and abuse in the exercise of the right to prosecute such a suit.

It would seriously impair the value of the title which the government grants after regular proceedings before officers appointed for the purpose, if the validity of the instrument by which the grant is made, can be impeached by any one whose interest may be affected by it, and would tend to discredit the authority of the government in such matters.

DECREE AFFIRMED.