RAILWAY REGISTER MANUF'G Co. *v.* NORTH HUDSON C. R. Co.
and others.

*(Circuit Court, D. New Jersey.* February 3, 1885.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—DEFENSE OF IRREGULAR ISSUE BY PATENT-OFFICE.

In a suit for infringement a patent cannot be invalidated by showing that the requirements of the statute, to be observed by the commissioner of patents in order to its issue, have not been regarded.

2. SAME—DURATION OF PATENT—IMPROPER ISSUE—FOREIGN PATENT.

Where letters patent have been issued by the patent-office for a period of less than 17 years, because of a reference to a supposed foreign patent, and the inventor has refused to accept them, and on further examination such letters are canceled and a new patent issued, the time intervening between the issue and allowance of the patent should not be deducted from the term of the patent, but the patentee be allowed to enjoy his monopoly for the full term of 17 years.

In Equity.

NIXON, J. When the above case came up for final hearing, the counsel for the defendants raised two preliminary questions, which were supposed to be decisive, and which, if ruled in favor of the defendants, would relieve the court from the duty of considering the controversy upon its merits. The two questions were (1) whether the complainant's patent was not invalid because no written specifications and claim were, in fact, signed by the inventor, nor was his signature attested by two witnesses, as required by the statute, before the letters patent could be issued; (2) whether the letters patent were not void because issued for a greater length of time than the statute allowed. The court considered these matters of sufficient gravity and importance to request the counsel of the parties, on a preliminary argument, to confine themselves to their discussion.

1. The facts in regard to the first question are these: On the twenty-ninth of December, 1877, John B. Benton, the inventor, made application in writing to the patent-office for letters patent for "improvement in fare registers." It consisted of a petition, oath, specification, and six claims, appointing C. C. Beaman, Jr., Esq., his attorney, with full power of substitution and revocation, to prosecute the application, and to make alterations and amendments therein. The specification was signed by the applicant and attested by two witnesses, and was verified by the oath of the patentee that he was the original and first inventor. On the third of January, 1878, the patent-office gave notice that the first, second, third, and sixth claims were rejected, having been anticipated by other patents. Matters thus stood till February 10, 1879, when Mr. Beaman gave notice to the commissioner of patents, to associate with him Messrs. Baldwin, Hopkins, and Peyton, as attorneys in the case. On the twenty-ninth of March following, the patent-office, at the request of Baldwin, Hopkins, and Peyton, erased the entire specification before filed, except the signatures,

and in lieu thereof, inserted new specifications and claims. These new specifications were not signed by Benton nor attested by any witnesses. They were a substitute for the former, at the request of the attorneys, and contained 16 instead of 6 claims.

Owing to suggestions of anticipation made to the attorney of the applicant, the third, fourth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth claims were erased on May 19, 1879, and the first, third, fourth, and fifth, as re-numbered, on the seventh of August following. Other changes were made; and on August 20, 1879, the commissioner of patents declared a preliminary interference with a pending application of Fowler and Lewis, filed April 2, 1879, as to the first, second, and third claims, as they then stood. These three claims were again amended November 20, 1879, the first interference dissolved; and on the eighteenth of December following a second interference was declared upon the amended claims. After being involved for some time in the technicalities of the patent-office, Lewis and Fowler seem to have withdrawn from the interference proceedings, and the complainant had the patent of its assignor, Benton, allowed with the then claims as last amended; which, it is alleged by the complainant, were merely a fuller restatement of the invention claimed by Benton in the fifth claim of his original application. The defendants, on the other hand, insist that they are for an entirely different invention. Upon this important question in the suit, I shall express no opinion until it is more fully presented and argued by the respective parties.

Outside of that question, I do not find any irregularity in the method of procedure which authorizes me to declare the patent void. There is a long list of cases holding that patents cannot be invalidated by proving that the requirements of the statute to be observed by the commissioner in order to their issue have not been regarded. Section 4920 of the Revised Statutes enumerate the five special defenses which may be pleaded in a suit for infringement. If congress had intended that the validity of patents might be assailed collaterally for other reasons, it would have said so in explicit terms. The only defenses set up in the answer in this case are (1) that Benton was not the original and first inventor of the alleged invention in the complainant's patent; (2) that the matters and things patented had been in prior use more than two years before the time when the application for the letters patent was made; (3) non-infringement; and (4) that the fare registers used by the defendants are embodied and contained in certain letters patent granted to Lewis and Fowler. No suggestion is made that the patent is void for fraud or irregularity in obtaining it. The supreme court in *Rubber Co.* v. *Goodyear*, 9 Wall. 797, held that congress did not mean a patent to be abrogated collaterally, but had left the remedy, in such a case, to be regulated by the principles of general jurisprudence, quoting with approbation the remark of Chancellor KENT, in *Jackson* v. *Lawton*, 10 Johns. 23,

that "unless letters patent are absolutely void on the face of them, or the issuing of them was without authority, or was prohibited by statute, they can only be avoided in a regular course of pleading, in which the fraud, irregularity, or mistake is regularly put in issue." In the recent case of *Giant Powder Co.* v. *Safety Nitro Powder Co.* 19 FED. REP. 511, Judge SAWYER says that the supreme court has over and over again affirmed the principle that "all questions of fact behind the patent are to be examined, heard, and conclusively determined by the commissioner of patents." See, also, on this point, Curt. Pat. § 274; *Hartshorn* v. *Eagle Shade Roller Co.* 18 FED. REP. 91, and cases there cited; *Crompton* v. *Belknap Mills*, 3 Fisher, 541; *Mowry* v. *Whitney*, 14 Wall. 434.

2. The second question may be disposed of in fewer words. On the argument I was inclined to the opinion that the complainants' patent must be reckoned void because it was practically granted for a longer term than the law allowed, but on careful examination of the facts I am not sure that this is a correct view of the transaction. It appears that while the proceedings for the patent were pending an English patent, granted to one Towle, dated November 2, 1877, was introduced into the case, not to show that the inventor, Benton, had patented the invention abroad, but to prove its non-patentability here by reason of the anticipation there. Benton met the reference; and from the fact that a patent was granted to him, it is presumed he satisfied the proper officers of the department that the date of his invention was anterior to the date of the English patent. This claim was allowed July 24th, and the letters patent were issued August 17, 1880. It does not appear when the patentee received them; but, on the fifth of October following, these letters patent, as granted, were returned to the office, with the statement of the solicitors that they had not been and could not be accepted by the inventor because not issued for 17 years, as the law authorized and required. It seems that before forwarding them some of the officers of the patent-office had printed over the specification the words "Patented in England, November 2, 1877." The legal effect of such an indorsement was to limit the life of the patent, as issued, to the period which the English patent had to run. It is conceded that this was a mistake, and that the patent-office had inadvertently assumed that the Towle English patent had been proved to have been obtained by or in the interest of Benton.

The commissioner of patents at once ordered the letters patent numbered 231,207 "to be returned to the original files of the application and to be canceled, and that letters patent in due form for the invention therein described be issued to John B. Benton, pursuant to his petition and the record in the case. The cancellation followed and letters patent No. 233,915, and dated November 2, 1880, were issued for the full period of 17 years from their date. If the first patent had been accepted by the patentee and he had brought suit

upon it against infringers, or had claimed any privileges or exercised any rights of-ownership under it, a grave question would arise whether afterwards the commissioner had any power to make any change, except by surrender and reissue under the provisions of section 4916 of the Revised Statutes; but he did nothing of the sort. Under the patent law the invention and the government were parties to a contract, and when the officers of the government said to him in effect, "Accept of a monopoly of your invention for a less period than seventeen years," he had a right to reply, "No; I repudiate such a contract; give to me what the law allows." And when it is given to him, the time intervening between the issue and allowance of his patent should not be deducted from the term of the patent unless he has derived some advantage therefrom. He will only enjoy his monopoly for the 17 years. If the complainant should have a decree for infringement, damages and profits will only be allowed, on the accounting, from the date of patent.

The case must be heard upon the merits.

NOTE.—Since preparing the foregoing opinion my attention has been called to the recent decision of the supreme court in *Mahn* v. *Harwood*, 5 Sup. Ct. Rep. 174. I have examined the case with care, and do not find anything therein which affects or controverts the reasoning and conclusions in the above case.