**MEDIMMUNE, INC., Plaintiff,**

v.

**GENENTECH, INC., et al., Defendants.**

No. CV03–2567 MRP (CTx).

United States District Court,
C.D. California.

Jan. 10, 2008.

Aaron P. Maurer, David C. Kiernan, Jessamyn S. Berniker, Paul B. Gaffney, Philip A. Sechler, Rebecca S. Legrand, Richard S. Scott, Williams and Connolly, Gerson A. Zweifach, Washington, DC, Andrea Weiss Jeffries, Donald William Ward, Munger Tolles & Olson, Los Angeles, CA, Elliot M. Olstein, Carella Byrne Bain Gilfillan Cecchi Steward & Olstein, Roseland, NJ, for Plaintiff.

Bryan K. Anderson, Sidley Austin LLP, Christopher S. Yates, Daniel M. Wall, Dean G. Dunlavey, J. Thomas Rosch, James Kevin Lynch, Mark A. Flagel, Mark A. Lemley, Robert J. Gunther, Jr., Latham & Watkins, Daralyn J. Durie, David J. Silbert, John W. Keker, Jon B. Streeter, Steven Arthur Hirsch, Keker & Van Nest, San Francisco, CA, Edward G. Poplawski, Paul D. Tripodi, II, Sandra S. Fujiyama, Sidley Austin, David I. Gindler, Joseph M. Lipner, Laura W. Brill, Morgan Chu, William Dalebout Bowen, William Joss Nichols, Richard E. Lyon, III, Irell & Manella, Los Angeles, CA, Gordon A. Goldsmith, Duarte, CA, for Defendant.

## ORDER GRANTING MOTION TO STRIKE JURY DEMANDS

MARIANA R. PFAELZER, District Judge.

Before the Court is MedImmune's Motion to Strike Jury Demands ("Pl.'s Mot."). Because the issue of infringement has effectively been resolved by MedImmune's stipulation as to Claim 33 and Genentech's unilateral covenant not to sue, MedImmune contends that no jury trial is necessary on any claim remaining in the case. The Court deems this matter appropriate for decision without oral argument, and accordingly, takes the hearing off calendar. See Fed.R.Civ.P. 78. Having carefully considered the arguments submitted, the Motion to Strike Jury Demands is GRANTED.

## I. BACKGROUND

Defendants Genentech and City of Hope [hereinafter "Genentech"] are assignees of U.S. Patent No. 6,333,415 ("The '415 Patent" or the "Cabilly II patent"). See Genentech's and City of Hope's May 29, 2007 Status Conference Statement. Plaintiff MedImmune is a biotechnology company whose most successful product is Synagis, a monoclonal antibody approved for the prevention of a serious lower respiratory disease. Declaration of James Young at 1; Plaintiff's First Amended Complaint ("FAC") ¶ 5. Shortly after the Cabilly II patent issued in 2001, MedImmune began paying royalties to Genentech under a license agreement with Genentech covering Synagis. However, it did so under protest, and subsequently filed this action on April 11, 2003. MedImmune sought a declaration that it owed no royalties under that license agreement because the Cabilly II Patent was invalid, unenforceable, and not infringed by MedImmune's production of Synagis. Id.

Following this Court's Claim Construction Order of August 16th, MedImmune stipulated that its production of Synagis infringes claim 33 of the Cabilly II patent as construed by the Court. Thereafter, Genentech filed an irrevocable and unconditional covenant never to sue MedImmune with respect to Synagis under any claim of the Cabilly II patent other than claim 33. See Cross Motion for Partial Dismissal at 1. Since the parties agree that Synagis infringes one, and only one, claim of the Cabilly II Patent, no issues remain in dispute under Count Two, which requests a declaration that Synagis does not infringe the Cabilly II Patent. Thus, three Counts remain from the FAC: Count One, for a declaration of MedImmune's rights and obligations under the license agreement with Genentech; Count Three, for a declaratory judgment of invalidity of the Cabilly II Patent; and Count Four, for declaratory judgment of unen-

forceability of the Cabilly II Patent. *See* FAC at ¶¶ 131–164. MedImmune now seeks to strike the demand for jury trial in its FAC on all the remaining issues in the case.

## II. LEGAL STANDARD

▋ The Seventh Amendment guarantees litigants the right to a jury trial in "Suits at common law." The Supreme Court has construed this language to require a jury trial in those actions analogous to common-law causes of action that were ordinarily decided in English law courts in the late 18th century. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Today, a two-pronged test governs whether the right of trial by jury attaches to a given cause of action. *See Tull v. U.S.,* 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). This test (the "historical test") examines both the nature of the issues involved and the nature of the remedy sought. *In re Lockwood,* 50 F.3d 966, 972 (Fed.Cir.1995), *vacated,* 515 U.S. 1182, 116 S.Ct. 29, 132 L.Ed.2d 911 (1995), (cited with approval in *Tegal Corp. v. Tokyo Electron America, Inc.,* 257 F.3d 1331, 1340 (Fed.Cir.2001)).

▋ Under the first prong of the test, the court compares the statutory action to 18th-century actions brought in the courts of England, inquiring whether it is more similar to ones that were tried in courts of law as opposed to courts of equity. *Tegal,* 257 F.3d at 1339. The second prong requires a court to examine whether the remedy sought is legal or equitable in nature. *Id.* In this inquiry, it is not a requirement "that both the cause of action and the remedy must be legal in nature before the Seventh Amendment right to a jury trial attaches," *Tull,* 481 U.S. at 421

n. 6, 107 S.Ct. 1831; the process is "not a mechanical one." *Lockwood,* 50 F.3d at 972 n. 6. However, the second prong is given more weight than the first. *Granfinanciera,* 492 U.S. at 42, 109 S.Ct. 2782; *Tegal,* 257 F.3d at 1341.

## III. ANALYSIS

Pursuant to the Supreme Court's "historical test," the Court examines each of the three counts (contractual rights, invalidity, and unenforceability) individually to determine whether a jury trial on the issues involved in each is required by the Seventh Amendment. For the reasons detailed below, it determines that no jury trial is necessary on Counts 1, 3 or 4.

### 1. Count 1: The Contract Claim

▋ Count 1 of the FAC requests a declaration of MedImmune's rights and obligations under the Genentech license agreement covering Synagis.[1] The license requires MedImmune to pay royalties on any products that would, but for the license, infringe one or more claims of the '415 patent "which have neither expired nor been declared invalid by a court … from which no appeal has been or may be taken." *See* Mot. of Defs. For Summ. J. on Pl.'s First, Second, and Fourth Causes of Action at 2. These contractual terms are not disputed by either party.

### a. Arguments

The parties present opposing views on the significance of the contract claim. MedImmune contends that it is the validity and enforceability of the patent that are dispositive in this suit, not the interpretation of the contract. Once the patent issues have been resolved, it argues, "conform[ing]" the license agreement to the findings on the patent counts will be a

---

1. Count One, entitled "Declaratory Judgment on Contractual Rights and Obligations," seeks a declaration that MedImmune "owes no pay-

ments under the License Agreements." FAC ¶¶ 131–133.

mere "formality." Pl.'s Mot. at 7–8.[2] In contrast, Genentech characterizes the present litigation as essentially a "dispute about money." *Id.* at 6 (quoting from MedImmune's oral argument before the Supreme Court). Genentech argues that unenforceability and invalidity merely present "the factual issues that MedImmune argues are relevant to its contractual obligation." *Id.* at 2.

More central to Genentech's position than its characterization of the contract, however, is its argument concerning the unusual posture in which the contract count was brought. More specifically, if this were not a declaratory action, Genentech contends, the contract claim "would likely come before the Court only after MedImmune stopped paying royalties and Genentech and City of Hope sued to recover" royalties or damages—a typical legal claim "to which the right to jury trial extends." Defs.' Oppn. to Mot. to Strike Jury Demands at 1, 5. It concludes that, because it would be entitled to a jury trial in this hypothetical situation, it may not be denied one in the present situation where the parties have been inverted.

### b. Analysis

Under the Seventh Amendment historical test, each cause of action must be examined individually to determine whether it is more similar to the actions that existed at common law or those in equity. *See Tull,* 481 U.S. at 417, 107 S.Ct. 1831. The historical test is thus inconsistent with Genentech's view of the contract claim, which appears to subsume some claims (the invalidity and unenforceability claims) within others (the contract claim). The Court analyzes the contract claim apart from those for invalidity and unenforceability.

### i. The contract claim presents no independent issues of fact as to damages or otherwise.

■ The Seventh Amendment "preserves a right to jury trial on issues of fact in suits for breach of contract damages between private party litigants." *Seaboard Lumber Co. v. U.S.,* 903 F.2d 1560, 1563 (Fed.Cir.1990). However, Genentech raises no factual issue as to the existence or amount of infringement damages or lost royalties: it readily concedes that no claim for damages is even possible because the contract has not been breached. Nor does Genentech point to any independent factual issues related to the contract itself. There is no dispute about the terms of the contract, for example, or the validity of its formation. Furthermore, the Court notes also that invalidity and unenforceability are *not* mere "factual issues" that fall under the contract.[3] Each must be evaluated separately under the historical test. For these reasons, the Court concludes that a jury trial is not required for Count 1.

### ii. Genentech may not, pursuant to *Beacon Theaters,* speculatively invert the position of the parties, to create a claim for damages where none existed.

Despite its lack of a claim for damages or royalties, Genentech raises a novel ar-

---

**2.** "If the patent is valid and enforceable, and MedImmune markets an otherwise-infringing product, it must pay royalties. Conversely, if the patent is invalid or unenforceable ... there is no obligation to pay." Pl.'s Mot. at 8.

**3.** It is also worth noting that issues of patent invalidity will rarely be pure issues of fact; rather, they most often consist of mixed questions of fact and law. *See, e.g., Lockwood v. American Airlines Inc.,* 107 F.3d 1565, 1570 (Fed.Cir.1997) (obviousness is a legal conclusion involving factual inquiries); *see also General Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1408 (Fed.Cir.1994) ("issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature").

gument based on *Beacon Theatres v. West-over,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), that would entitle it to a jury trial. Citing that case for the proposition that the Declaratory Judgment Act "specifically preserves the right to jury trial for both parties," 359 U.S. at 504, 79 S.Ct. 948, Genentech argues that the Court must examine "how the underlying controversy would have been presented without the enactment of the Declaratory Judgment Act" in order to determine whether it is entitled to a jury trial. Defs.' Opp'n at 5. Under "ordinary circumstances," it contends, the issues in this suit would have "likely" arisen *only* if MedImmune ceased to pay royalties on its production of Synagis and *Genentech* then sued to recover royalties or damages for infringement. *See* Defs.' Opp'n at 5. In that scenario, Genentech would clearly have a claim for damages that would entitle it to a jury trial, so it asserts it is likewise entitled to a jury trial in this declaratory action brought by MedImmune.

Genentech's creative argument contains two serious flaws. First, Genentech construes *Beacon Theatres* far more broadly than is warranted. *Beacon* involved a declaratory plaintiff (Fox) who sought a declaration that its contractual arrangements did not violate antitrust law, as well as an injunction to prevent its competitor (Beacon) from suing it for antitrust violations.[4] 359 U.S. at 502–503, 79 S.Ct. 948. The Supreme Court held that "if Beacon *would have been entitled* to a jury trial in a treble damage suit against Fox," it could not be deprived of that right "merely because Fox took advantage of the availability of

declaratory relief" and sued first. *Id.* at 504, 79 S.Ct. 948 (emphasis added). Thus, *Beacon Theatres* involved a party that could have brought an actual claim for damages against an adverse party, but was deprived of it when the latter filed a declaratory suit first. Its holding is simply that an adverse party cannot invoke the Declaratory Judgment Act in order to preempt a jury trial on an existing damages claim.

*Beacon Theatres* is silent as to the situation in which the ostensibly deprived party has no present damages claim whatsoever. Thus, that case does not support Genentech's much broader proposition that the parties in any declaratory suit can be inverted so as to create a hypothetical claim for damages. If Beacon Theaters had brought antitrust claims against Fox Theaters, it would have been entitled to a jury trial; the Supreme Court held this right was preserved despite the declaratory posture of the case. However, because Genentech has no damages claim here, it would not be entitled to a jury trial in the first place and the rule of *Beacon Theatres* is inapplicable.

But even if Genentech's interpretation of *Beacon Theatres* is valid, an intractable problem remains: how does one properly determine the "ordinary circumstances" in which the case should have been brought? In contrast to the declaratory defendant in *Beacon Theatres,* Genentech can seek no legal or equitable remedy under the '415 Patent and could not have commenced this litigation.[5] Thus, any scenario inverting or rearranging the positions of MedImmune

---

4. In *Beacon Theatres,* the trial court found that Fox's complaint presented "basically equitable issues" and denied Beacon a jury trial on the antitrust claims. *Id.* at 503–504, 79 S.Ct. 948. The Supreme Court subsequently reversed the Court of Appeals' refusal of Beacon Theaters' writ of mandamus on the jury issue. *Id.* at 501, 511, 79 S.Ct. 948.

5. The Supreme Court has held that *MedImmune,* as a licensee in good standing, may bring a declaratory judgment action, though *Genentech,* as licensor, has voluntarily given up its right to sue the licensee for infringement. *See MedImmune v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

and Genentech necessarily involves some degree of speculation. Genentech posits the "likely" situation in which MedImmune stops paying royalties *but continues to infringe,* at which point Genentech could sue. Yet there are other possibilities, not all of which would allow Genentech to assert a claim for damages. For example, if the scenario was one in which Genentech could sue only for future infringement, it would only be able to bring a claim for an *injunction,* and no jury trial would be available for the contract claim. *See, e.g., Shubin v. United States Dist. Court,* 313 F.2d 250 (9th Cir.1963). Regardless of whether this scenario is more or less "likely" than Genentech's, however, it illustrates the fundamental problem with this approach: that the particular "inverted" scenario chosen determines whether there is a right to jury trial. The Seventh Amendment does not deal in hypotheticals. Genentech may not ground its right to a jury trial on speculation as opposed to a present claim for damages.

### 2. Count 2: the Invalidity Claim

■ The contract aside, the crux of the parties' dispute in this motion is whether a jury trial is required for the patent invalidity claim. Indeed, the parties urge entirely different legal interpretations of the relevant legal standard. While MedImmune argues directly from the Supreme Court's historical test, brushing aside Federal Circuit precedent as inapposite, Genentech emphasizes the primacy of the Federal Circuit's *In re Lockwood* decision, 50 F.3d 966, 972 (Fed.Cir.1995), *vacated,* 515 U.S. 1182, 116 S.Ct. 29, 132 L.Ed.2d 911 (1995), and its progeny. After considering both positions, the Court finds that the *Lockwood* doctrine, and not the bare historical test, provides the correct framework for the decision on this issue. However, contrary to Genentech's position, a close analysis of *Lockwood* indicates that *no* jury trial right attaches to the invalidity claim in this case.

#### a. Arguments

MedImmune reasons directly from the Seventh Amendment historical test itself. With respect to the test's first prong (nature of the action), it argues that "[a]ctions 'to annul or vacate a patent' have long been treated as equitable as nature." Pl.'s Mot. at 2. More importantly, on the second prong (nature of the remedy), it asserts that the fact that no legal remedy is sought is dispositive of the jury trial issue.

In contrast, Genentech argues forcefully that the Federal Circuit's *Lockwood* decision already contains the relevant analysis under the historical test for a counterclaim for patent invalidity. Genentech claims that, under *Lockwood,* a right of jury trial attaches unless and until the patentee waives that right, regardless of whether a damages claim is even possible. Under this view, the right to jury trial must turn on "the patentee's free and voluntary election of remedy." Defs.' Opp'n at 10 (emphasis omitted). Towards this end, its brief persuasively marshals both *Lockwood's* historical test analysis and the "waiver" exception developed in the cases that followed *Lockwood.* In essence, it argues that *Lockwood* makes the right to a jury trial the "default" position on an invalidity claim. Despite its inability to bring a claim for damages, it argues it has in no way waived its right to a jury trial, and thus is entitled to one.

#### b. Overview of the *Lockwood* doctrine

The Court first analyzes the *Lockwood* decision and the cases that follow it. It notes that neither party has provided a complete picture of the applicable legal standard for the right to a jury trial on patent invalidity.

In *In re Lockwood,* the Federal Circuit applied the two-prong Seventh Amendment historical test to determine whether a claim for patent invalidity, when brought in a declaratory posture [6], affords a right to jury trial. 50 F.3d at 972. Applying the Supreme Court's historical test, *Lockwood* examined both the nature of the issue and the nature of the remedy involved in an invalidity claim. *Id.* Under the first prong, the court concluded that a declaratory claim for patent invalidity most resembled "a suit for patent infringement in which the affirmative defense of invalidity has been pled." *Id.* at 972. It noted that the main difference between the historical analog and the instant claim was that the parties' positions were inverted, i.e. in a declaratory posture; but under *Beacon Theatres,* 359 U.S. at 504, 79 S.Ct. 948, such an inversion could not affect the parties' Seventh Amendment rights.[7] *Id* at 975. Historically, *Lockwood* explained, an infringement suit could have been heard in either a court of equity or a court of law, depending on whether the remedy sought by the patentee was damages or an injunction.[8] Thus, the patentee's choice of

remedy was dispositive as to whether the invalidity claim would be heard by a jury.

Having found that the patentee's choice of remedy controls under the first prong, the *Lockwood* court performed no second prong analysis concerning the remedy sought. Presumably, the nature of the remedy sought by the patentee in a given case would always be apparent. *Accord Tegal,* 257 F.3d at 1341 ("[l]ittle analysis is required" on the second prong).

### i. Rejection of the broad reading of *Lockwood*

Despite *Lockwood's* detailed historical analysis, the scope of its holding was initially unclear. The *Lockwood* court itself was unable to apply the very analysis of the two-prong test that it had just delineated because of an unusual procedural posture: the patentee's infringement claim in that case had already been resolved on summary judgment. *Id.* at 969. Thus, for purposes of the jury trial analysis, the Federal Circuit viewed the patentee in *Lockwood* as incapable of bringing either a claim for damages or one for injunctive

---

**6.** Because the issue of infringement had already been resolved on summary judgment in *Lockwood,* the court treated the situation as a declaratory action for invalidity in which the patentee could bring no claim for damages or injunctive relief. 50 F.3d at 970 ("the particulars of Lockwood's dismissed claim can play no part in our determination whether he enjoys a Seventh Amendment right to a jury trial as to validity in American's action for a declaratory judgment"). As explained in the following subsection, this odd procedural posture affected the court's anomalous holding in the case.

**7.** This is, not surprisingly, the origin of the rationale Genentech uses to bolster its contract claim argument. There is a distinction to be made, however. Inversion of the parties in a declaratory action, as employed by the court in *Lockwood,* is an absolute necessity when applying the Seventh Amendment historical test because the Declaratory Judg-

ment Act did not exist in Suits at common law in the eighteenth century. In contrast, Genentech uses the inversion principle to create a *hypothetical* "non-inverted" orientation of the parties in which Genentech would have a claim for damages. Such an approach is not supported by either *Beacon Theatres* or *Lockwood.* *See Tech. Licensing,* 423 F.3d at 1290 (*"Lockwood* does not stand for the proposition that a counterclaim for invalidity always gives rise to a right to a jury trial (for either party) on the ground that it is an inverted infringement action. . . .").

**8.** "If the patentee sought only damages, the patentee brought an action at law; in such a case, the defense of invalidity was tried to the jury. . . . However, if the patentee facing past acts of infringement nevertheless sought only to enjoin future acts of infringement, the patentee could only bring a suit in equity, and the defense of invalidity ordinarily would be tried to the bench." *Id.* at 976.

relief. Yet inexplicably, the court nevertheless found a right to a jury trial on invalidity existed. Echoing the language of *Beacon Theatres*, it declared that it would be unfair to deny the patentee a jury trial "merely because the validity of his patents comes before the court in a declaratory judgment action for invalidity rather than as a defense in an infringement suit." *Lockwood*, 50 F.3d at 976.[9]

The natural reading of *Lockwood* might thus suggest that a patentee has a right to jury trial in *any* declaratory action to determine patent validity, even one in which a counterclaim for damages is not possible. That certainly appeared to be the conclusion in an unpublished Federal Circuit case called *In re SGS–Thomson Microelectronics, Inc.*, which held that a jury trial was required on an invalidity counterclaim in a case where the patentee sought only injunctive relief. 60 F.3d 839 (Fed.Cir. 1995) (nonprecedential) (citing *Lockwood*). However, the Federal Circuit explicitly rejected this interpretation in a subsequent case. *In re Technology Licensing*, 423 F.3d 1286, 1289 (Fed.Cir.2005) (per curiam) ("TLC argues that a patentee has a right to a jury trial in any declaratory judgment action to determine patent validity. . . . In fact, *Lockwood* is not as broad

as TLC's characterization suggests.").[10] Though *Lockwood's* reasoning regarding the historical test survives, it is clear that its holding on its own facts has not been followed.

### ii. Subsequent cases reaffirm the reasoning of *Lockwood* and create a "waiver" exception to the jury trial right

After a grant of certiorari was mooted, *Lockwood* was vacated by the Supreme Court without explanation.[11] *See American Airlines, Inc. v. Lockwood*, 515 U.S. 1182, 116 S.Ct. 29, 132 L.Ed.2d 911 (1995). However, the Federal Circuit repeatedly confirmed the vitality of *Lockwood's* reasoning in subsequent cases. *See Tegal Corp. v. Tokyo Electron America, Inc.*, 257 F.3d 1331, 1339 (Fed.Cir.2001) ("Although no longer binding, we find *[Lockwood's]* reasoning pertinent"); *Tech. Licensing*, 423 F.3d at 1289 n. 1 ("we have continued to rely on the 'relevant and detailed analysis' in Lockwood").

The Federal Circuit also took the opportunity in subsequent cases to fashion a corollary to the general rule of *Lockwood*. As explained earlier, under *Lockwood* a patentee who elects to proceed solely in

9. Again, highlighting the bizarre nature of this situation, patent invalidity *did* actually arise as a defense (a counterclaim) in the original infringement suit brought by Lockwood. However, the *Lockwood* court chose instead to create a counterfactual situation for purposes of applying the historical test.

10. Judge Newman (whose position is noted by Genentech) would support an even broader interpretation of the jury right than the one rejected here: that a patentee retains a right to a jury on its invalidity claim *regardless* of the remedy it elects. *See Tech. Licensing*, 423 F.3d at 1291–96 (Newman, J., dissenting). Judge Newman's position, of course, is a minority in the Federal Circuit, but it also conflicts in other aspects with Genentech's position. For one, Judge Newman is somewhat

dismissive of *Lockwood* itself. In addition, while Genentech argues both here and in its summary judgment motion that there is no freestanding, substantive cause of action for patent invalidity, Judge Newman would urge that the issue of invalidity be considered an action at law in its own right that is not "simply derivative of infringement." *Id.* at 1294–95.

11. After *Lockwood* was decided, the Supreme Court granted certiorari; however, the respondent in *Lockwood* withdrew his jury demand in order to moot the case before the Supreme Court. The Supreme Court subsequently not only dismissed certiorari, but upon the urging of the petitioner, vacated the opinion.

equity (by suing only for injunctive relief) is not entitled to a jury trial on the issue of invalidity. The *Tegal* and *Tech. Licensing* cases take this idea one step further: no jury trial for an invalidity claim is available even where the patentee *initially* brings a claim for damages, but then *voluntarily* abandons that claim. *See Tegal Corp. v. Tokyo Electron America, Inc.*, 257 F.3d at 1338 ("Tegal's understanding was that by withdrawing its damages claim, it would lose its right to a trial by jury."); *Tech. Licensing*, 423 F.3d at 1286–87. *Tegal*, in particular, makes clear that a patentee who abandons its claim for damages is treated under the Seventh Amendment historical test in exactly the same way as a patentee who never brought a damages claim at all. 257 F.3d at 1340 ("given Tegal's interest only in an injunction, it is clear that Tegal would have needed, in eighteenth century England, to bring its case in a court of equity.") In a sense, then, *Lockwood's* version of the historical test has no "memory"; only the nature of the patentee's present claim matters for purposes of determining whether a right to jury trial exists.

Oddly, *Tech. Licensing* (in a per curiam decision, and in dicta) attempted to reconcile *Lockwood's* ambiguous holding [12] in terms of the waiver concept. *Tech. Licensing* characterizes *Lockwood* as a decision in which "the patentee had not elected to limit himself to an equitable remedy"— essentially turning *Lockwood's* cryptic reliance on *Beacon Theatres*, *see* 50 F.3d at 976, into an inquiry into waiver. *See Tech. Licensing*, 423 F.3d at 1289. Yet this explanation is incomplete and unsatisfying,

because any inquiry into whether the patentee "waived" a jury right that it did not even possess is tautological at best.[13] In the Court's view, the better practice would be to disregard the actual holding of the vacated *Lockwood* opinion (which again, stands for a much broader rule that has since been rejected) while adhering to its application of the historical test.

### iii. The *Lockwood* doctrine applies to the procedural posture of this case.

As noted above, the Federal Circuit has continued to reaffirm the relevance of the reasoning of *Lockwood*, if not its holding. Even the *Apotex* decision, which MedImmune claims would be "dispositive of this motion" were it binding precedent, cites and applies the *Lockwood* framework. *See In re Apotex*, No. 690, 49 Fed.Appx. 902, 2002 WL 31388364, *1 (Fed.Cir. Oct. 9, 2002) (nonprecedential). Indeed, the variety of procedural postures in which the Federal Circuit has applied the *Lockwood* framework suggests that its analysis of the historical test is relevant regardless of the manner in which patent invalidity is pled. *See Tegal*, 257 F.3d at 1331 (considering patent invalidity brought as a claim in a declaratory complaint); *Tech. Licensing*, 423 F.3d at 1286 (invalidity brought as affirmative defense in an infringement suit); *Apotex*, 49 Fed.Appx. 902 (invalidity brought as counterclaim in a statutory infringement suit based on the Hatch–Waxman Act). Whether or not *Lockwood* is in fact "scarcely a compelling analysis of the law," Pl.'s Reply at 7, MedImmune may

---

12. The *Lockwood* court had adopted (somewhat ironically, for Genentech) the legal fiction, for the purposes of historical test analysis, that the defendant had brought a standalone, declaratory action for patent invalidity in which the patentee was unable to bring any claim for damages or an injunction. *See* 50 F.3d at 969.

13. Nor does it make sense to argue that the patentee in that case did not "waive" its damages claim because it was dismissed on summary judgment, against his will. As noted in the previous footnote, the *Lockwood* panel treated the case as a (counterfactual) declaratory action for invalidity in which a damages claim was never brought.

*not* disregard *Lockwood's* finding, under the first prong of the historical test, that the closest historical analog to a modern invalidity claim is an infringement suit in which invalidity has been pled as an affirmative defense. In any case, the alternative analog suggested by MedImmune, the English writ of *scire facias*, is inapplicable.[14] Though *Lockwood* is in agreement on the equitable nature of that writ, it declined to select it as its historic analog, finding it to be more analogous to a claim for inequitable conduct than to one for patent invalidity. 50 F.3d at 975 n. 9.[15]

Having laid a foundation as to the proper standard, the Court now applies it to the present situation and concludes there is no right to jury trial in this case.

### c. Analysis

The *Lockwood* doctrine is straightforward in its application. As established above, the closest historical analog to an invalidity claim is most likely the same no matter the procedural posture of the case in which invalidity is brought: an infringement suit in which invalidity has been pled. Yet, this unique choice of historical analog means that the answer to the first prong inquiry is variable. A modern claim for patent invalidity is not *always* analogous to a historical action in law, or in equity; rather the answer depends on whether the relief sought by the patentee is itself equitable or legal. Of course, this is precisely the inquiry of the second prong. Thus, the two prongs of *Lockwood's* historical test

effectively collapse into a single inquiry— the nature of the remedy sought by the patentee.

In this case, however, the patentee can seek no remedy whatsoever. Genentech is precluded by its license agreement with MedImmune from suing for legal *or* equitable relief because MedImmune is a licensee in good standing. Given that the patentee here does not have a choice to proceed in law *or* equity, what should be the outcome of the historical test? The answer lies in whether the "default" position in *Lockwood's* version of the historical test is a right to jury trial, or no such right at all.

After examining the manner in which the *Lockwood* doctrine has been applied to two situations in which there was no present claim for infringement damages, the Court is persuaded that no right to jury trial exists in the absence of such a damages claim. These situations are (i) the "future infringement" scenario in *Shubin*, a case that was considered and distinguished in *Lockwood*; and (ii) the Hatch–Waxman cases. As noted by MedImmune, courts in these situations have held that there is no right to jury trial *because* no claim for damages was brought—regardless of the fact that no claim for damages *could* have been brought. The Supreme Court's own jurisprudence reinforces that the "free and voluntary election of remedy," is subject, in the first instance, to the existence of an infringement claim for damages. Thus, the default under *Lock-*

14. MedImmune cites *Mowry v. Whitney*, 14 Wall. 434, 81 U.S. 434, 20 L.Ed. 858 (1871) and *U.S. v. American Bell*, 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450 (1888) for the proposition that that an action to declare a patent invalid was historically a suit brought in equity. But *Mowry* and *American Bell* identify this historic action as none other than the writ of *scire facias*. *Mowry*, 81 U.S. at 435, 81 U.S. 434; *American Bell*, 128 U.S. at 360, 9 S.Ct. 90.

15. It appears that the writ of *scire facias* is not analogous to an action for invalidity or for inequitable conduct. *See also AGFA Corp. v. Creo Prods. Inc.*, 451 F.3d 1366 (Fed.Cir.2006) (additionally rejecting the possibility that *scire facias* is a potential historical analog to *inequitable conduct* that would trigger the right to a jury trial).

*wood's* version of the historical test is an absence of a jury trial right.

### i. *Lockwood's* interpretation of *Shubin:* no present damages claim, no jury right on invalidity

In *Shubin v. United States Dist. Court,* 313 F.2d 250 (9th Cir.1963), the patentee was a defendant in a declaratory action for invalidity. Because the declaratory plaintiff had not yet infringed, the patentee stipulated to the absence of any counterclaim for infringement damages and brought only a counterclaim for an injunction against future infringement. *Id.* at 251. The Ninth Circuit held that no jury trial was required on the issue of validity. *Id.* at 252 (denying writ of mandamus because "the claim here involved is, on the peculiar pleadings of this case . . . a purely equitable claim").

While Genentech attempts to characterize *Shubin* as a "waiver" case in which the patentee *voluntarily* sought only equitable relief, Defs.' Opp'n at 16, it is significant that *Lockwood* considered and distinguished *Shubin* precisely because the patentee in that case could not have brought a claim for damages. *See Lockwood,* 50 F.3d at 977 ("In short, no claim for damages could have been brought.") It is true that *Lockwood* also observed that the patentee in *Shubin* "sought only injunctive relief." *Id.; see also Tech. Licensing,* 423 F.3d at 1291 (analogizing the patentee in *Shubin* to the patentee in *Tech. Licensing,* who had voluntarily withdrawn a claim for damages).[16] But one cannot seriously argue that the *Shubin* patentee voluntarily chose *any* remedy when his only choice was between proceeding in equity and not proceeding at all. At the very least, that is not the "choice" between relief in law and equity that was envisioned under *Lockwood's* analysis of the first prong of the historical test.

Finally, Genentech argues that *Lockwood* itself precludes the interpretation that the waiver doctrine does not apply when the patentee has no claim for damages. Defs.' Opp'n at 16. While *Lockwood* did indeed find a right to jury trial on invalidity in a situation in which the defendant patentee could not assert a claim for damages, that holding cannot be extended beyond the facts of that case. As explained earlier, to do so would be to adopt the "broad reading" of the *Lockwood* holding, rejected by the Federal Circuit in *Tech. Licensing,* that would always find that there is a jury right. *See* 423 F.3d at 1289.

### ii. The Hatch–Waxman cases concur with *Shubin*

Cases arising in the specialized context of the Hatch–Waxman Act further affirm this line of reasoning. A Hatch–Waxman patent infringement case typically arises when a generic drug manufacturer files an Abbreviated New Drug Application (ANDA) with the FDA, the first step towards gaining FDA approval for a generic version of a patentee's patented drug. *See Glaxo Group Ltd. v. Apotex, Inc.,* No. 00 C

---

**16.** *Tech. Licensing* cites *Lockwood's* treatment of *Shubin* as support "for the proposition that if the patentee has abandoned any claim for damages, the related invalidity claims are triable to the bench, not to a jury." 423 F.3d at 1291. The court appears to be making the odd point that the patentee in *Shubin,* who had stipulated to the absence of any claim for infringement damages and therefore never brought a claim because he *could* not, is somewhat analogous to the patentee in *Tech. Licensing,* who acknowledged the effect of an adverse ruling in limine that limited its recoverable damages by *withdrawing* the damages claim it had previously brought. *Id.* at 1287, 1291. Thus, *Tech. Licensing* appears to be making a loose analogy between the two situations, rather than characterizing *Shubin* itself a case in which "waiver" occurred.

5791, 2001 WL 1246628 at *4–5 (N.D.Ill. Oct. 16, 2001), *affirmed, In re Apotex,* No. 690, 49 Fed.Appx. 902 (Fed.Cir. Oct. 9, 2002). Filing an ANDA filing represents an artificial, statutory act of infringement under 35 U.S.C. § 271(e)(2) that is jurisdictionally sufficient to allow the patent owner to sue the ANDA-filer for a declaratory judgment of infringement and an injunction enjoining future infringement; the patentee is statutorily prohibited from recovering damages. *Id* at *4. Thus, as in *Shubin,* patentees in Hatch–Waxman cases have no claim for damages, yet must typically defend the validity of their patents.

As MedImmune notes, the Federal Circuit in the non-precedential *In re Apotex* affirmed a finding that no jury right exists in Hatch–Waxman cases. 49 Fed.Appx. at 1 ("[U]nder the unusual circumstances of this case, involving only possible future infringement, and in which there can be no damages .... the underlying controversy is entirely equitable, [and] there can be no right to a jury trial."). This conclusion also appears to represent the modern consensus among district courts. *See, e.g., Sanofi–Synthelabo v. Apotex, Inc.,* No. 02 Civ. 2255, 2002 WL 1917871 (S.D.N.Y. Aug. 20, 2002) (surveying the district court caselaw); *Glaxo,* 2001 WL 1246628 at *4 ("In *[Lockwood* and *Tegal],* the patentee had a claim for damages ... In the instant action, plaintiff can bring no claim for

damages...."); *Pfizer Inc. v. Novopharm Ltd.,* No. 00 C 1475, 2001 WL 477163 (N.D.Ill. May 3, 2001) (concluding that "[t]his case is therefore more akin to *Shubin").* While an earlier line of cases beginning with *Hoechst Marion Roussel, Inc., v. Par Pharmaceutical, Inc.,* Civ. No. 95–3673, 1996 WL 468593 (D.N.J. March 14, 1996), reached the opposite conclusion, there is a unanimous modern trend towards denying a right to jury trial on invalidity in Hatch–Waxman cases.[17]

Genentech protests that the Hatch–Waxman cases arise in a "different statutory context," and in particular, that § 271(e)(4)(c) statutorily forecloses the patentee from seeking a remedy for damages, distinguish them from this situation. Defs.' Opp'n at 13–14 n. 9. However, these cases present an even stronger argument than *Shubin* for the rule that the lack of a damages claim trumps the patentee's ability to choose. Under the Hatch–Waxman scheme, the patentee is forced to sue for infringement in order to delay its generic competitor's ANDA filing and preserve its statutory rights. *See* 21 U.S.C. § 355(j)(5)(B)(iii).[18] Thus, a Hatch–Waxman patentee has even less of a "choice" than the impatient patentee in the *Shubin* context who sues only for future infringement; it must proceed in equity or lose valuable rights. Clearly, choice is not the determining factor in these suits. Statuto-

**17.** *Hoechst* and one case that followed it, *Warner–Lambert Co. v. Purepac Pharmaceutical Co.,* No. Civ. A 98–2749, 2001 WL 883232 (D.N.J.2001), *did* conclude that there was a right to jury trial for invalidity in Hatch–Waxman cases. However, *Hoechst* appears to be based on the faulty assumption that a declaratory suit based on § 271(e)(2) could have been also brought under the conventional § 271(a) theory of infringement. *See Glaxo,* 2001 WL 1246628 at *5 (disagreeing with *Hoechst* on this point). *See also* Brian Coggio and Timothy DeMasi, *The Right to a Jury Trial under the Waxman–Hatch Act—The Question Revisited and Resolved,* 2002 Food

and Drug L.J. 155 (contrasting the earlier *Hoechst* line of cases with *Glaxo* and *Novopharm,* which the authors note have confirmed their earlier prediction that courts would find that there is no jury right in Hatch–Waxman cases.)

**18.** More specifically, the Hatch–Waxman Act authorizes a 30–month stay of a generic competitor's ANDA filing if the patentee brings an infringement suit against that party, pursuant to 35 U.S.C. § 271(e)(2), within the statutorily prescribed 45–day period. 21 U.S.C. § 355(j)(5)(B)(iii).

ry context aside, the fact remains that the *Sanofi, Glaxo* and *Novopharm* courts, fully aware no damages counterclaim *could* have been brought, nevertheless hinged their *Lockwood* analysis on the fact that no claim for damages existed.

### d. Conclusion

The Supreme Court's Seventh Amendment jurisprudence reinforces the primacy of a legal claim for damages over the "patentee's free and voluntary election of remedy." Election of remedy is significant only under the first prong analysis of *Lockwood,* which selected a historical analog in which a claim for patent invalidity is always derivative of the infringement claim. Yet because the two-prong test reduces to a single inquiry concerning the nature of the remedy sought, the patentee's ability to choose its remedy is of secondary importance. *See Granfinanciera,* 492 U.S. at 42, 109 S.Ct. 2782; *Tegal,* 257 F.3d at 1341 (explaining that the second prong of the test is more important). The Seventh Amendment only guarantees private litigants the right to a jury trial in "Suits at common law." When no remedy is sought at law, there is no jury right.

Furthermore, *Lockwood's* treatment of *Shubin* and the more recent Hatch–Waxman decisions indicate that the patentee's normal prerogative to choose between legal and equitable remedies does not extend to situations where that choice is not presented. True, a patentee "will ordinarily be able to dictate whether it will have a jury trial [on invalidity] by choosing whether to limit itself to equitable relief," *Technology Licensing,* 423 F.3d at 1292. But "ordinarily" does not mean "always." These two examples demonstrate that where the choice is not between pursuing an equitable remedy and a legal remedy, but between pursuing an equitable remedy and *not bringing suit at all,* the patentee has no right to decide whether a jury trial can be held on an invalidity claim. Noth-

ing compels a different conclusion in this situation, where the patentee is precluded from bringing suit in equity *or* in law.

Lastly, whether or not Genentech is a "passive punching bag, stripped of the patentee's usual ability to balance its infringement claims against the other party's invalidity claims," is irrelevant. The Court must decide the issue based on the historical test before it, not on considerations of fairness.

### 3. Count 4: Patent Unenforceability

■ The Federal Circuit has "consistently treated inequitable conduct as an equitable defense that may be adjudicated by the trial court without a jury." *AGFA Corp. v. Creo Prods. Inc.,* 451 F.3d 1366, 1375 (Fed.Cir.2006) (citing *Gardco Mfg., Inc., v. Herst Lighting Co.,* 820 F.2d 1209 (Fed.Cir.1987)). While Genentech argues that there is "no constitutional right to a bench trial," the relevant question is merely whether a constitutional right exists for a jury trial. None exists here. *See AGFA,* 451 F.3d at 1373–75 (finding that the English writ of *scire facias* is not "an historic analog [to a modern inequitable conduct claim] that would trigger a Seventh Amendment right to a jury trial" under the historical test).

Genentech asks the Court to exercise its discretion to order a jury trial of MedImmune's inequitable conduct claim as well as for validity. However, while such a choice is within this Court's discretion, Genentech has not shown any compelling reason for a jury trial on this claim. Finally, the fact that MedImmune vigorously opposes bifurcation of the trial into jury and non-jury issues is irrelevant because the Court has not found a jury trial necessary on the other claims in this case.

## IV. CONCLUSION

For the reasons stated above, MedImmune's Motion to Strike Jury Demands is hereby GRANTED.

IT IS SO ORDERED.